*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2001 FED App. 0018P (6th Cir.)
File Name: 01a0018p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

*v.*

No. 99-1812

PARNELL HAROLD BOUCHA,
*Defendant-Appellant.*

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 98-00203—David W. McKeague, District Judge.

Argued: October 25, 2000

Decided and Filed: January 17, 2001

Before: DAUGHTREY and CLAY, Circuit Judges;
RUSSELL, District Judge.*

———————————

**COUNSEL**

**ARGUED:** Paul L. Nelson, FEDERAL PUBLIC
DEFENDERS OFFICE, Grand Rapids, Michigan, for
Appellant. Andrew B. Birge, ASSISTANT UNITED

_____

*The Honorable Thomas B. Russell, United States District Judge for
the Western District of Kentucky, sitting by designation.

STATES ATTORNEY, Grand Rapids, Michigan, for Appellee. **ON BRIEF:** Paul L. Nelson, FEDERAL PUBLIC DEFENDERS OFFICE, Grand Rapids, Michigan, for Appellant. Janice Kittel Mann, ASSISTANT UNITED STATES ATTORNEY, Grand Rapids, Michigan, for Appellee.

––––––––––––

## OPINION

––––––––––––

RUSSELL, District Judge. Parnell Boucha pleaded guilty to eight counts of armed bank robbery and an additional count of using a firearm in a crime of violence. It is undisputed that during each robbery, Boucha would demand keys to a nearby automobile from one of the bank employees and then use the vehicle as his getaway car. Boucha never forced a teller to leave the bank building or to ride with him. At sentencing, the district court added two levels to Boucha's base offense level in each count of bank robbery, pursuant to the carjacking enhancement of USSG §2B3.1(b)(5). The district judge reached this result after objection by Boucha. Boucha now appeals the application of that provision in his case, claiming he did not take the vehicles "from the person or presence" of the victims, as the carjacking enhancement in the guidelines requires. Following the lead of our sister circuits, we hold the defendant's conduct constituted carjacking and affirm the district court's sentencing order.

## BACKGROUND

Between May and October of 1998, Parnell Boucha committed eight armed bank robberies in western Michigan. In each case, Boucha would wait until most customers had left the bank. After the bank appeared empty, Boucha would enter with his face and head covered, wearing latex gloves and carrying a handgun. He would announce the robbery, brandish a weapon and leap over the counter to watch over the tellers as they placed money into bags he provided. After gathering the money, he would demand the keys to a bank

Guidelines. The district court properly applied that standard and did not err in concluding that Boucha met the Sentencing Guidelines' requirements for the carjacking enhancement.

## CONCLUSION

This Court **AFFIRMS** the district court's two-level enhancement to Boucha's base offense level in each count of bank robbery, pursuant to the carjacking enhancement of §2B3.1(b)(5).

accessible.[6]  Were it not for Boucha's actions and his use of fear and intimidation, the victims could have maintained control of their vehicles.

The Court notes that any other result would give a tortured and conflicting reading to the federal carjacking statute and the Sentencing Guidelines.  The two use similar language rooted in common law robbery.  It would be a strange and incongruent result to create a situation where Boucha could be indicted and convicted of carjacking by a jury, but could not receive a carjacking sentencing enhancement for the same behavior when both use language drawn from the same common law robbery "person or presence" principles.

Although we do apply the rule of lenity to matters relating to the Sentencing Guidelines, *United States v. Sanders*, 162 F.3d 396, 402 (6th Cir.1998), and, indeed, have not hesitated in the past to apply the rule to decisions regarding criminal sanctions, *see United States v. Morton*, 17 F.3d 911, 915 (6th Cir.1994), the rule of lenity is generally inapplicable unless, "after a court has 'seize[d][on] every thing from which aid can be derived,' it is still left with an ambigu[ity]." *Chapman v. United States*, 500 U.S. 453, 463, 111 S.Ct. 1919, 114 L.Ed.2d 524 (1991) (quoting *United States v. Bass*, 404 U.S. 336, 347, 92 S.Ct. 515, 30 L.Ed.2d 488 (1971)); *see United States v. Hudspeth*, 208 F.3d 537 (6th Cir.), *cert. denied*, 121 S.Ct. 201 (2000).  This case does not present such a situation.  Through *Burns* and its progeny, courts have defined carjacking under the federal carjacking statute.  We find that analysis as it applies to "person or presence" applicable to the carjacking enhancement contained in the Sentencing

---

[6]*But see Lake*, 150 F.3d at 275-76 (Becker, C.J., dissenting)(arguing that, even under the facts described in *Lake*, the defendant was guilty of at most "keyjacking").  Judge Becker argues in his dissent that the car's closeness is irrelevant to the inquiry.  Because the Sentencing Guidelines (and the federal statute) uses language requiring the car to be taken from the victim's "person or presence" and presence requires an unspecified but undeniable proximity, we respectfully disagree with Judge Becker.  We find closeness to be a relevant criterion under the Sentencing Guidelines.  *See Kimble*, 178 F.3d at 1168 n1.

employee's car parked in the bank parking lot.  He would then order everyone in the bank to sit on the floor while he drove the employee's car to a nearby prearranged location where he would leave the stolen vehicle undamaged and escape in his own car.

A grand jury indicted Boucha on eight counts of armed bank robbery, eight counts of using and carrying a firearm in relation to a crime of violence, being a felon in possession of a firearm, possession of a firearm with an obliterated serial number and possession of a small amount of heroin.  Pursuant to a plea agreement, Boucha pleaded guilty to the eight counts of bank robbery and a single count of using and carrying a firearm in relation to a crime of violence.  The other charges were dismissed.  The agreement provided Boucha should expect a total sentence of 240-258 months of imprisonment and allowed Boucha to set aside the agreement should the sentence exceed this range.

The presentence investigation report ("PSR") included a two-level enhancement to each of the eight bank robbery counts for carjacking, pursuant to USSG § 2B3.1(b)(5).  Boucha objected to the inclusion of carjacking and the correlative enhancement in the PSR, and repeated his objection at the sentencing hearing.  The prosecution did not dispute Boucha's objection.

Despite Boucha's unopposed argument, the district court denied Boucha's objection and adopted the recommendation of the PSR, applying the enhancement.  The resulting sentencing range was 295-353 months of imprisonment, thus exceeding the plea agreement range.  Accordingly, the court gave Boucha the option of setting aside the agreement and proceeding to trial.  After consultation with his attorney, Boucha decided to proceed with the sentencing even though the sentencing range exceeded the original projection.  The court subsequently sentenced Boucha to a total of 318 months

of imprisonment.[1]   Boucha timely filed a notice of appeal pursuant to Fed.R.App.P. 4(a).

On appeal Boucha questions only whether the district court properly applied the carjacking enhancement in Boucha's case.  The government no longer opposes application of the enhancement and argues in support of the district court's opinion.

### STANDARD

A district court's construction of the sentencing guidelines is a question of law which this Court reviews de novo. *United States v. Bazel*, 80 F.3d 1140, 1141 (6th Cir. 1996).

### DISCUSSION

Boucha argues that the application of the carjacking enhancement found in U.S. Sentencing Guidelines Manual § 2B3.1(b)(5)(1998), is not appropriate in this case because Boucha did not take vehicles in the immediate presence of the owner.  This is a question of first impression in this Circuit.

Through 18 U.S.C. § 2119, Congress created a specific federal offense for carjacking.  Following § 2119, the United States Sentencing Commission added a carjacking enhancement to USSG § 2B3.1.  § 2B3.1 of the 1998 Sentencing Guidelines provides the base offense level and specific offense enhancements for robbery.  Under subsection (b)(5), the Sentencing Guidelines instruct courts to apply a two-level increase when an offense involves carjacking.  The only reference to this subsection comes in the Application Notes of the Commentary to § 2B3.1.  Note 1 states that

[1] Although not raised by Boucha, the Court notes that the sentencing here does not violate the principles espoused in *Apprendi v. New Jersey*, __ U.S. __, 120 S.Ct. 2348, 2366 n. 21, 147 L.Ed.2d 435 (2000), or *Edwards v. United States*, 523 U.S. 511, 515, 118 S.Ct. 1475, 140 0L.Ed.2d 703 (1998). *See also Mistretta v. United States*, 488 U.S. 361, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989)(holding the Sentencing Guidelines constitutional).

common law robbery language.  Just as with other types of robbery, the victim's proximity to the property is a predicate to the crime.

Because the Sentencing Commission added the carjacking section to the robbery portion of the Sentencing Guidelines and utilized common law robbery language, we find it appropriate to interpret the carjacking language with common law robbery principles in mind.  We find that property is in the presence of a person if it is so within his reach, observation and control that he could, if not overcome by violence or prevented by fear, retain possession of it.  Presence, thus defined, requires a significant degree of nearness without mandating that the property be within easy touch; it must be accessible.[5]

In this case, the Court finds that the district court did not err in giving a two-level enhancement for carjacking.  Boucha brandished weapons, took keys and eventually stole cars from frightened victims.  The cars were not miles away.  Rather, as in *Kimble*, Boucha stole from victims who parked their cars just outside their place of employment.  The cars were

[5] Boucha argues that Congress intended the federal carjacking statute to cover situations like those where "two or three criminals approach a car waiting at a traffic light, or stopped by means of a deliberate 'fender-bender' accident, and force the driver to turn over the keys at gunpoint." H.R.Rep.No. 102-851(I), 102d Cong., 2d Sess. 15, *reprinted in* 1992 U.S.C.C.A.N. 2381.  He asserts that Congress had a limited view of carjacking and that Congress did not intend for carjacking to include situations where the driver is not in or immediately near his car.

A full review of the legislative history behind 18 U.S.C. § 2119 reveals that one cannot so easily limit the carjacking statute.  Congress enacted the federal carjacking statute in conjunction with several other statutes intended to curb organized car theft in America.  Carjacking was one of the measures Congress took in this effort as Congress viewed carjacking a means of organized car theft.  Although here it is clear that Boucha's actions were not part of an organized theft ring, it is not so clear that others would not use similar methods to accomplish different goals.  It would be inappropriate to read the legislative history in such a limited fashion.

carjacking. The only reference to this subsection comes in the Application Notes of the Commentary to § 2B3.1. Note 1 states that "'[c]arjacking' means the taking or attempted taking of a motor vehicle from the person or presence of another by force and violence or by intimidation." USSG § 2B3.1, comment. (n.1). § 2B3.1 provides no further definition.

Boucha correctly notes that the use of "carjacking" in the Sentencing Guidelines mirrors, in many regards, the federal carjacking statute.[4] The federal carjacking statute tracks the language used in other federal robbery statutes. *See United States v. Moore*, 73 F.3d 666, 668 (6th Cir. 1996)(H.R.Rep. No. 851 at 17, reprinted in 1992 U.S.C.C.A.N. at 2834; *United States v. Perez-Garcia*, 56 F.3d 1, 3 (1st Cir.1995)). As such, we find the reading given the federal carjacking statute as interpreted via common law robbery principles applicable to the carjacking enhancement to the robbery section of the Sentencing Guidelines. We are satisfied that the interpretation of "person or presence" from the robbery statutes conforms with both the language and purpose of the Sentencing Guidelines. The Sentencing Guidelines added a carjacking enhancement to its robbery section shortly after Congress created a federal carjacking statute. Both use

---

[4]Boucha argues that the federal statute is unclear and that, if anything, the Sentencing Guidelines favor a reading of "person or presence" that requires a taking from the actual person. The Sentencing Guidelines are not absent of any discussion of "person or presence." Application Notes to the Commentary of § 2B1.1 (the section governing larceny) provides a definition similar to the wording contained in subsection (b)(5). USSG § 2B1.1, comment. Note 7 indicates that "from the person of another" refers to "property taken without the use of force, that was being held by another person or was within arms' reach. Examples include pick-pocketing or non-forcible purse-snatching, such as the theft of a purse from a shopping cart." USSG § 2B1.1, comment. (n.7). Boucha argues that this inclusion is significant and that this Court should interpret "person or presence" under carjacking to mean the same thing. Because the common law treats larceny and robbery differently, the Court cannot transplant the Sentencing Guidelines' definition in the larceny section (based on slightly different wording) to the robbery section.

"'[c]arjacking' means the taking or attempted taking of a motor vehicle from the person or presence of another by force and violence or by intimidation." USSG § 2B3.1, comment. (n.1).

No federal court has addressed the meaning of "person or presence" as used within this section of the Sentencing Guidelines. The Eleventh Circuit, however, recently stated in dicta that the Sentencing Commission did not necessarily intend the language of 2B3.1(b)(5) to mirror the federal carjacking statute as it neither referenced it directly nor amended it when Congress amended it to add a specific intent requirement. *See United States v. Bates*, 213 F.3d 1336, 1339 (11th Cir. 2000). That case emphasized that one not charged with violating the statute but who has his or her sentence enhanced under § 2B3.1(b)(5) may only appeal to the language of the guidelines. *Id. at* 1340. Despite this ruling by the Eleventh Circuit, it seems unreasonable not to look to other circuits' interpretation of "person or presence" in the context of § 2119, the federal carjacking statute, as the Sentencing Guidelines mirror this portion of the federal statutory language.

Six circuits have considered the issue of "person or presence" in the federal carjacking statute. *See United States v. Edwards*, No. 99-60863, 2000 WL 1597744 (5th Cir. Oct. 26, 2000); *United States v. Brown*, 200 F.3d 700 (10th Cir. 1999), *cert. denied*, 120 S.Ct. 1213, 145 L.Ed.2d 1114, *and*, 120 S.Ct. 1706, 146 L.Ed.2d 509 (2000); *United States v. Moore*, 198 F.3d 793 (10th Cir. 1999), *cert. denied*, 120 S.Ct. 1693, 146 L.Ed.2d 499 (2000); *United States v. Kimble*, 178 F.3d 1163 (11th Cir. 1999), *cert. denied*, 120 S.Ct. 806, 145 L.Ed.2d 678 (2000); *United States v. Lake*, 150 F.3d 269 (3d Cir. 1998); *United States v. Perez-Garcia*, 56 F.3d 1 (1st Cir. 1995); *United States v. Murray*, No. 94-10124, 1995 WL 295438 (9th Cir. May 11, 1995); *United States v. Burns*, 701 F.2d 840 (9th Cir. 1983). In each case, the court found a carjacking violation had occurred even though the charged defendant took the keys from the victim while the victim was away from his or her car.

The Ninth Circuit first decided this issue in *United States v. Burns*, 701 F.2d 840 (9th Cir. 1983). In *Burns*, the defendant approached the victim in a smoke shop and demanded the keys to the victim's car at gunpoint. *Burns*, 701 F.2d at 840. After the victim told Burns that the keys were in the car, Burns left the smoke shop and stole the keys and the car. *Id.* Burns later contended that he did not take the car from the victim's "person or presence," since the car and the keys were outside the building. *Id.* The court disagreed. The district court had instructed the jury that property is in the presence of a person if it is "so within his reach, inspection, observation or control, that he could if not overcome by violence or prevented by fear, retain possession of it." *Id.* at 843. The Ninth Circuit concluded that the cars and keys were effectively within the victim's presence. *Id.* The Ninth Circuit re-affirmed and expounded on *Burns* in its unpublished decision in *United States v. Murray*, No. 94-10124, 1995 WL 295438 (9th Cir. May 11, 1995), analogizing "person or presence" in the carjacking statutes to principles traditionally applied in robbery cases. *Id.*

The First Circuit next considered the "person or presence" language of the carjacking statute in *United States v. Perez-Garcia*, 56 F.3d 1 (1st Cir. 1995), *cited for comparison in United States v. Moore*, 73 F.3d 666, 668 (6th Cir. 1996). *Perez-Garcia* differs from the case at bar as the gunman not only took the victim's keys at gunpoint, but also forced her to ride in the car with him. Nevertheless, the reasoning of the First Circuit remains applicable. The *Perez-Garcia* Court noted that neither the carjacking statute nor the robbery statute upon which Congress based § 2119 defined "from the person or presence." *Perez*, 56 F.3d at 3. The court noted that "[c]ourts generally agree that taking from a victim's person is understood to include the common law conception of taking from a victim's presence." *Id.*; *see e.g.*, *Collins v. McDonald*, 258 U.S. 416, 420, 42 S.Ct. 326, 66 L.Ed. 692 (1922) (finding that "taking property from the presence of another feloniously and by putting him in fear is equivalent to taking it from his personal protection and is, in law, a taking from the person"). The court then concluded that taking

resort to the legislative history to ascertain the meaning of the language. *See In re Comshare, Inc. Sec. Litig.*, 183 F.3d 542, 549 (6th Cir. 1999); *see also United States v. Kassouf*, 144 F.3d 952, 955 (6th Cir. 1998). If the statute remains ambiguous after consideration of its plain meaning, structure and legislative history, the rule of lenity is applied in favor of criminal defendants. *See United States v. Hill*, 55 F.3d 1197, 1206 (6th Cir. 1995).

In *United States v. Bass*, 404 U.S. 336, 347-48, 92 S.Ct. 515, 30 L.Ed.2d 488 (1971), the Supreme Court enunciated the policies behind the time honored axiom of lenity:

This principle [rule of lenity] is founded on two policies that have long been part of our tradition. First, "a fair warning should be given to the world in language that the common world will understand, of what the law intends to do if a certain line is passed. To make the warning fair, so far as possible the line should be clear." Second, because of the seriousness of criminal penalties, and because criminal punishment usually represents the moral condemnation of the community, legislatures and not courts should define criminal activity. This policy embodies "the instinctive distaste against men languishing in prison unless the lawmaker has clearly said they should."

*Id.* at 348 (citations omitted). Accordingly, the "policy of lenity means that the Court will not interpret a federal statute so as to increase the penalty it places on an individual when such an interpretation can be no more than a guess as to what Congress intended." *Bifulco v. United States*, 447 U.S. 381, 387, 100 S.Ct. 2247, 65 L.Ed.2d 205(1980)(quoting *Ladner v. United States*, 358 U.S. 169, 178, 79 S.Ct. 209, 3 L.Ed.2d 199 (1958)). Courts may apply the rule of lenity to interpret the sentencing guidelines. *See United States v. Blake*, 59 F.3d 138, 140 (10th Cir. 1995).

Boucha argues that the Sentencing Guidelines fail to offer explicit guidance under § 2B3.1. Subsection (b)(5) instructs courts to apply a two-level increase when an offense involves

took the victim's keys and wallet and escaped in the victim's car. *Id.* at 935. Like the defendants in each case, Edwards claimed he did not take the car from the victim's presence. *Id.* Recounting the law of other circuits and relying specifically on the Eleventh Circuit's holding in *Kimble* which had required "accessibility" of the car, the Fifth Circuit upheld the carjacking conviction. *Id.* at 935-937.[3]

As the review of caselaw reveals, the trend among the circuits is to adopt the early reasoning of the Ninth Circuit in *Burns* and its progeny by holding that property is in the presence of a person if it is so within his reach, inspection, observation or control, that he could if not overcome by violence or prevented by fear, retain possession of it. In practical terms, this has meant that courts find carjacking applicable to defendants who use force to rob a person of his car keys when that person's car is nearby. This Court finds the reasoning used by our sister circuits persuasive and appropriate, and therefore adopts the reasoning as our own.

Despite the consensus of all circuits that have ruled on the meaning of "presence" within the federal carjacking statute, Boucha argues that the Sentencing Guidelines does not provide a clear directive and that we should therefore apply the rule of lenity. It is a well settled canon of statutory construction that when interpreting statutes, "[t]he language of the statute is the starting point for interpretation, and it should also be the ending point if the plain meaning of that language is clear." *United States v. Choice*, 201 F.3d 837, 840 (6th Cir.)(citing *United States v. Rob Pair Enters., Inc.*, 489 U.S. 235, 241, 102 S.Ct. 1026, 103 L.Ed.2d 290 (1989)), *cert. denied,* 120 S.Ct. 2210, 147 L.Ed.2d 243 (2000). However, if the language in the statute is not clear, courts may

[3]The Fifth Circuit specifically noted that the victim had just parked his car and was located only 15 feet from it. *Edwards*, 231 F.3d at 937. After discussing several cases, the Fifth Circuit chose to rely specifically on *Kimble* and its requirement of accessibility. *Id.* Even so, *Kimble* involved a situation where the victim was located inside a building while her car was located outside.

property from the personal protection of another by fear amounts to a personal taking sufficient to satisfy the robbery and carjacking statutes. *Perez*, 56 F.3d at 3.

In *United States v. Lake*, 150 F.3d 269 (3d Cir. 1998), the Third Circuit adopted the Ninth Circuit's reasoning on "person or presence." In *Lake*, a gunman approached the victims on the beach and requested their car keys. *Lake*, 150 F.3d at 271. When they refused, he brandished a gun and the victims eventually turned over their keys. *Id.* Lake took the keys and proceeded to retrieve the car which was up a steep hill and out of sight. *Id.* The victims followed, but were too late as Lake had driven away by the time they reached the parking lot. *Id.* Lake argued he could not be convicted of carjacking as he had taken only the keys from the presence of the victims and not their car. *Id.* at 272. The court noted that

> [t]he carjacking statute's requirement that the vehicle be taken "from the person or presence of the victim" "tracks the language used in other federal robbery statutes," H.R.Rep. No. 102-851(I), at 5 (1992), reprinted in 1992 U.S.C.C.A.N. 2829, 2834, such as 18 U.S.C. §§ 2111, 2113, and 2118. *See United States v. Perez-Garcia*, 56 F.3d 1, 3 (1st Cir.1995). Under these statutes, "property is in the presence of a person if it is 'so within his reach, observation or control, that he could if not overcome by violence or prevented by fear, retain his possession of it.'" *United States v. Burns*, 701 F.2d 840, 843 (9th Cir.1983). *See also United States v. W.T.T.*, 800 F.2d 780, 782 (8th Cir.1986).

*Id.* at 272. The court continued its analysis by indicating that "presence," as used in carjacking and robbery statutes, "is not so much a matter of eyesight as it is one of proximity and control: the property taken in the robbery must be close enough to the victim and sufficiently under his control that, had the latter not been subjected to violence or intimidation by the robber, he could have prevented the taking." *Id.* (citing LaFave and Scott, Substantive Criminal law § 8.11 at 443 (1986)).

Although the Third Circuit did follow the other circuits' interpretation of "person or presence," it did so in a split opinion. Boucha relies heavily on the dissent in *Lake*. The dissenting judge indicated that he would uphold Lake's conviction for keyjacking, or for larceny and key robbery, but that he could not agree that Lake was guilty of carjacking. *Id.* at 275. The dissent argued that defining "presence" to include things so within a person's "reach, inspection, observation or control, that he could if not overcome by violence or prevented by fear, retain his possession of it" created a vague definition with a slippery slope.

Based on this definition, the majority concludes that a rational jury "could infer that [the victim] hesitated before pursuing Lake due to fear and that if she had not hesitated she could have reached the parking area in time to prevent Lake from taking her car without employing further force, violence, or intimidation." . . . This proves too much. If it is true that had Croaker not hesitated out of fear she could have followed Lake up the steep path leading from the secluded beach to the road, then it is equally true (barring physical limitations) that she could have followed him up that path and then halfway across St. Thomas. The fact that [the victim's] car was nearby is thus not relevant; if she could have followed Lake up the hill, she could have followed him anywhere. I am aware, of course, that the craft of judging requires line-drawing, but I simply do not see how that endeavor can be principled when it is predicated on open-ended definitions of key statutory terms, especially where those terms admit of plain meaning.

*Id.* at 276.[2]

The Eleventh Circuit addressed "person or presence" in 1999, and adopted the reasoning of the majority in *Lake*. That case, *United States v. Kimble*, concerned a case factually

---

[2] The dissent bases its argument in part on the proposition that the carjacking statute is unconstitutional.

similar to the case at bar. 178 F.3d 1163 (11th Cir. 1999). In *Kimble*, a jury convicted two men of robbing a restaurant by entering just before opening and forcing the employees to the ground at gunpoint. *Id.* at 1165. After robbing the store and employees, the men demanded to know who had a car parked outside the restaurant. *Id.* The manager volunteered and the men took his keys, left the store, and escaped in the manager's car. *Id.* On appeal, one defendant argued the because he took keys from a victim located inside a building with his car outside, the defendant did not take the car from the victim's presence. *Id.* at 1163. The court identified the issue before them as "whether robbing a victim of his or her keys and then taking the victim's car which was parked right outside the building from which the keys were taken constitutes the taking of 'a motor vehicle . . . from the person or presence of another' within the meaning of § 2119." *Id.* at 1166 (alteration in original). The Court adopted the reasoning used in *Burns* and *Lake*, but diffused some of the concern raised by the *Lake* dissent by adding that "for a car to be within one's reach or control, it must be accessible." *Id.* The Court ultimately upheld the defendant's conviction for carjacking.

The Tenth Circuit twice considered the issue in 1999, upholding the carjacking convictions in both instances and adopting reasoning of *Burns*, *Lake*, and *Kimble*. *See United States v. Moore*, 198 F.3d 793 (10th Cir. 1999); *United States v. Brown*, 200 F.3d 700 (10th Cir. 1999). *Moore* involved facts similar to those presented here: Moore robbed a bank at gunpoint, demanded that the teller give him her keys and then used the car to escape. *See United States v. Moore*, 198 F.3d 793 (10th Cir. 1999).

Finally and most recently, the Fifth Circuit addressed the issue of "person or presence" in a carjacking conviction in *United States v. Edwards*, 231 F.3d 933 (5th Cir. 2000). Edwards approached the victim on the street, feigned a question and then demanded the victim's keys and wallet. *Edwards*, 231 F.3d at 934. After striking the victim with his gun which discharged and believing the victim dead, Edwards