**Not for Publication in West's Federal Reporter**

# United States Court of Appeals
## For the First Circuit

No. 08-2259

UNITED STATES OF AMERICA,

Appellee,

v.

SANDRY GARCÍA-GARCÍA,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Judge José A. Fusté, U.S. District Judge]

Before

Lipez, Baldock,* and Howard, Circuit Judges.

Rafael Anglada-Lopez for appellant.
Lucas Cass, Assistant United States Attorney, with whom Rosa Emilia Rodríguez-Vélez, United States Attorney, and Nelson Pérez Sosa, Assistant United States Attorney, were on brief for appellee.

December 4, 2009

---

*Of the Tenth Circuit Court of Appeals, sitting by designation.

**BALDOCK, Circuit Judge**. A jury convicted Defendant-Appellant Sandry García-García of carjacking in violation of 18 U.S.C. § 2119(2) and of brandishing a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A)(ii). The district court denied Defendant's motions for acquittal and a new trial and sentenced him to a total of 181 months. On appeal, Defendant first argues the district court "lacked jurisdiction" because the victim was not driving or a passenger in the vehicle when the alleged carjacking took place. Defendant, then, asserts that because he was not properly convicted of an underlying crime of violence, his firearm conviction cannot stand for "lack of jurisdiction." Defendant also claims that because police only conducted photo lineups, the out-of-court identifications were impermissibly suggestive.[1] Exercising

---

[1] Defendant additionally argues the jury pool was not fairly representative because he was "tried and convicted by a jury in a District where 84.1% of all Puerto Rico residents do not command English 'very well.'" Brief of Defendant-Appellant at 19. Other than that bald assertion, Defendant provides no legal or factual support for such a claim. We, therefore, refuse to consider it. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived."). Regardless, we have repeatedly rejected such a claim. See United States v. Rodríguez-Lozada, 558 F.3d 29, 38 (1st Cir. 2009) (explaining that an English proficiency requirement for jurors, including in Puerto Rico, does not violate a defendant's Sixth Amendment right to a jury made up of a fair cross section of the community); United States v. González-Vélez, 466 F.3d 27, 40 (1st Cir. 2006) (same); United States v. Dubón-Otero, 292 F.3d 1, 17 (1st Cir. 2002)(same).

jurisdiction under 18 U.S.C. § 1291, we reject his arguments and affirm the district court.

I.

Because the attack on Federico López-Villafañe ("López"), which gave rise to Defendant's present convictions, has already come before this court in United States v. García-Álvarez, 541 F.3d 8 (1st Cir. 2008), we recite here only the minimum facts necessary to explain our holding. On the morning of April 12, 2006, López exited his apartment building and walked towards his car. As he approached his car, four assailants attacked him. Three of the assailants covered their faces with t-shirts. At the moment of the attack, López was standing about a foot and half away from his car. According to López, two of the four attackers carried nickel-plated automatic pistols. During the scuffle, the assailants' t-shirt-masks fell, revealing their faces. López would later testify that Defendant hit him with a nickel-plated pistol on his forehead, face, knees, and shins. The violence escalated. Another attacker used a rock to beat López while the others held him. They then forced him into his building's basement. The attackers duct taped his feet, hands and eyes. They demanded money, held a gun to his head, and threatened to kill him if he did not cooperate. They took his house keys, car keys, and pocket money. At one point, the attackers went upstairs to López's apartment to search for money. Eventually, López fled the basement. A neighbor's bodyguard

-3-

arrived and called the police. López then saw his car leaving from the opposite side of the building. He was later taken to a hospital where he received stitches to his head and legs and, later, knee surgery.

Three days later, police showed López dozens of photographs at police headquarters. He marked about twenty, but did not definitively identify any one picture. A month later, police showed him four to five sheets, each containing six to nine photographs. From this array, López identified Defendant as one of the men who assaulted him and took his car. He also later identified Defendant in court.

López's maid, Clemencia Lewis, also encountered the attackers when they searched his apartment for money. She testified that she came face-to-face with Defendant, another assailant pointed a silver gun at her, and a third person stood by. Lewis further testified Defendant pushed her onto the floor, tied her hands and feet, and covered her head with a towel. She identified Defendant as her attacker from a photo lineup the month following the attack and later identified him again in court.

II.

Defendant first argues the district court lacked jurisdiction as to his § 2119(2) conviction because López was not driving or a passenger in his vehicle when the alleged carjacking took place. "Whoever, with the intent to cause death or serious

-4-

bodily harm takes a motor vehicle that has been transported, shipped, or received in interstate or foreign commerce from the person or presence of another by force and violence or by intimidation, or attempts to do so," resulting in "serious bodily injury," is guilty of the crime of carjacking punishable by up to twenty-five years in prison. 18 U.S.C. § 2119(2). Defendant argues the carjacking statute requires the Government to prove he intended to cause death or serious bodily harm at the precise moment he demanded or took control over the car by force or intimidation. He reasons that because the evidence at trial indicated he and the other assailants did not drive López's car away for twenty to thirty minutes after they beat, bound, and stole the car keys from López, the Government failed to establish he possessed the intent to cause death or serious bodily harm at the time the car was actually stolen.

Defendant's second argument flows from the first. Any person who brandishes a firearm during and in relation to any crime of violence shall be sentenced to a minimum of seven years in prison. 18 U.S.C. § 924(c)(1)(A)(ii). Defendant claims because his conviction of a crime of violence was improper for "lack of jurisdiction," his § 924(c)(1)(A)(ii) firearm conviction is also fatally flawed for "lack of jurisdiction."

We note for the sake of clarity and accuracy Defendant's first and second arguments are inherently not jurisdictional.

Essentially, he asserts the Government did not prove all elements of the crimes of §§ 2119(2) and 924(c)(1) because it failed, first, to show he intended to cause death or serious bodily harm at the moment of the taking of the vehicle and, second, that he was properly convicted of a crime of violence. Lack of evidence as to an element of a federal crime, however, means the Government has not met its burden sufficient to support a conviction, not that the district court is deprived of jurisdiction to adjudicate the case. See United States v. González-Mercado, 402 F.3d 294, 301 (1st Cir. 2005) (explaining that the argument that the facts are insufficient to satisfy the "results in serious bodily injury" element of 18 U.S.C. § 2119(2) did not call into question the district court's jurisdiction, but rather the sufficiency of the evidence relating to the defendant's guilt). A federal criminal case generally lies within the subject matter jurisdiction of a district court if the indictment charges that the defendant committed a crime defined by Congress as a federal crime. United States v. González, 311 F.3d 440, 442 (1st Cir. 2002). Therefore, unless Congress provided otherwise, subject matter jurisdiction existed in the present case because Defendant was charged in district court under §§ 2119(2) and 924(c)(1), which are federal criminal statutes. See id. (explaining that unless Congress provided otherwise, subject matter jurisdiction existed in the case because the defendant was charged

in district court under 46 U.S.C. § 1903, which is a federal criminal statute).

Therefore, Defendant's argument, properly characterized, challenges the sufficiency of the Government's evidence, not the district court's constitutional or statutory authority to adjudicate the case against him. Id. Construing his argument as a challenge to the sufficiency of the evidence supporting his convictions, we review de novo, "evaluating whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." García-Álvarez, 541 F.3d at 15 (quoting United States v. Meléndez-Torres, 420 F.3d 45, 48-49 (1st Cir. 2005) (internal quotations and citations omitted)).

Even properly construed, Defendant's argument is unpersuasive. Last year, we faced a similar argument made by one of Defendant's compatriots in this criminal enterprise (who, as it happens, is Defendant's uncle). In García-Álvarez, we explained § 2119(2) requires the Government to establish the element of intent to cause death or serious bodily harm at the time the defendant takes control of the motor vehicle. García-Álvarez, 541 F.3d at 15-16. The victim need not be in close proximity to the motor vehicle at the time of the taking. Id. at 16. On these facts, we concluded Defendant and his accomplices gained constructive control over López's motor vehicle in the apartment

-7-

building's basement, when they forced López to turn over his car keys.  Id.  (citing United States v. Savarese, 385 F.3d 15, 20 (1st Cir. 2004)).  We also determined that the assailants' intent to cause death or serious bodily harm was "more than amply established" by the assailants' use of force, including the use of firearms, and the infliction of serious bodily harm upon López.  Id.  Moreover, "it was only upon being threatened with further violence and even death that López surrendered his car keys."  Id.  Given that the attackers' assault on López left him bleeding and in need of surgery, we concluded "it is beyond question that the assailants possessed the requisite intent to cause death or serious bodily injury."  Id.

In ordinary circumstances, "it is axiomatic that new panels are bound by prior panel decisions in the absence of supervening authority" from the Supreme Court or an en banc court.  United States v. Holloway, 499 F.3d 114, 118 (1st Cir. 2007).  Defendant acknowledged this rule at oral argument but seemed to suggest that extraordinary circumstances existed warranting reversal of our fellow panel because the García-Álvarez opinion conflicted with the Supreme Court's precedent in Holloway v. United States, 526 U.S. 1, 12 (1999).  We understand Holloway to clarify that "[t]he intent requirement of § 2119 is satisfied when the Government proves that at the moment the defendant demanded or took control over the driver's automobile the defendant possessed the

intent to seriously harm or kill the driver if necessary to steal the car (or, alternatively, if unnecessary to steal the car)." Holloway, 526 U.S. at 12. This is precisely the basis of our holding in García-Álvarez, in which we determined that at the moment Defendant and the other assailants "took control" over López's car by taking his keys from him at gunpoint, they possessed the intent to seriously harm or kill him, satisfying § 2119's intent requirement. Because we find no conflict between García-Álvarez and Holloway and, therefore, no extraordinary circumstances, we conclude we are bound by the panel's holding in García-Álvarez that the intent requirement is satisfied when a defendant intends to cause death or serious bodily injury at the time he takes control of the vehicle, whether or not the car is immediately driven. The evidence in this case was more than sufficient to permit the jury to find that Defendant possessed such intent. Accordingly, we affirm Defendant's § 2119(2) and related § 924(c)(1)(A)(ii) convictions.

## III.

Defendant's photo lineup argument is equally unpersuasive. Defendant contends that because his out-of-court identifications were conducted only by photo spreads, they were impermissibly suggestive, giving rise to a very substantial likelihood of misidentification. The district court rejected this argument and denied his motion to suppress the out-of-court photo

lineup identifications.  The court reasoned that an identification need not be done through a live lineup and, without any specific claim of impermissibly suggestive procedure, the reliability of a photo lineup is a question of credibility for the jury.

We "uphold a district court's denial of a motion to suppress if any reasonable view of the evidence supports it." United States v. de Jesus-Rios, 990 F.2d 672, 677 (1st Cir. 1993). No one contests that the police only conducted photo lineups to identify Defendant.  We note, however, the police tried to conduct a live lineup shortly after the incident, but Defendant fled, making that impossible.  Furthermore, Defendant has provided no legal precedent to support his claim that conducting photo lineups alone, instead of a live lineup, is impermissibly suggestive.  He also has not provided any evidence that the way in which the police conducted the photo lineups was impermissibly suggestive or unreliable.  His claim consequently fails.  See García-Álvarez, 541 F.3d at 15 (explaining that because the defendant did "not flag any of the procedures utilized during this [photo] identification as impermissibly suggestive," his claim failed).

For the foregoing reasons, the judgment of the district court is affirmed.