# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-3400

_____

United States of America,　　　　　*
　　　　　　　　　　　　　　　　　　*
　　　　　　　Appellee,　　　　　　*
　　　　　　　　　　　　　　　　　　*　Appeal from the United States
　　v.　　　　　　　　　　　　　　*　District Court for the
　　　　　　　　　　　　　　　　　　*　Southern District of Iowa.
Devan Rodez Casteel,　　　　　　　*
　　　　　　　　　　　　　　　　　　*
　　　　　　　Appellant.　　　　　*

_____

Submitted: September 23, 2011
Filed: December 16, 2011

_____

Before RILEY, Chief Judge, COLLOTON and GRUENDER, Circuit Judges.

_____

RILEY, Chief Judge.

A jury convicted Devan Rodez Casteel (Casteel) of carjacking in violation of 18 U.S.C. § 2119, and using or carrying a firearm in relation to a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A)(ii). Casteel appeals, arguing (1) the district court[1] abused its discretion by denying his motion to sever his trial from that of his father, Tiran Rodez Casteel (Tiran); (2) the evidence was insufficient to convict him of carjacking; and (3) the denial of severance and admission of certain evidence resulted in a miscarriage of justice warranting acquittal or a new trial. We affirm.

_____

[1]The Honorable Robert W. Pratt, United States District Judge for the Southern District of Iowa.

# I.  BACKGROUND

On September 11, 2008, at approximately 11:30 p.m., Darlene Eitzen, a 76-year-old widow, was alone in her farmhouse five miles from Coin, Iowa, where she was sewing a dress, when she heard two armed men, later determined by the jury to be Casteel and Tiran (collectively, Casteels), banging on the door and yelling at her to let them in.  Before Eitzen could comply, the Casteels broke the glass on the front door with their guns, reached inside and unlocked the door.

The Casteels entered the house and ordered Eitzen at gunpoint to sit in a chair on the far side of the room.  Casteel, who was wearing a mask, held Eitzen at gunpoint while Tiran proceeded upstairs.  Eitzen believed the robbers were familiar with her house as though they "had been there before" because Tiran "knew exactly where he wanted to go" to find her late husband's extensive coin collection, most of which she kept upstairs in a bedroom closet.  Upset he was unable to find "as much as what he knew was there," Tiran demanded "to know where's the rest of it."  Eitzen deduced the Casteels were responsible for an earlier burglary of part of the collection on July 27, 2008, while Eitzen was at church.[2]

Casteel guarded Eitzen throughout the robbery.  He either pointed his gun at her or held it down to his side.  Casteel told Eitzen "he was getting tired and he was going to be tireder because they had to make a trip to the river."  Frightened by the robbers' guns and yelling, "[Eitzen] didn't know whether [Casteel] meant put [her] car in the river, put [her] in the river, or what."

---

[2]On July 28, 2008, Casteel and Tiran made two sales of an unusually large quantity of collectible coins at a small coin store in St. Joseph, Missouri.  The Casteels made additional sales on July 29 and August 5.  The sales totaled more than $10,000.

The robbery lasted at least an hour. Eitzen spent nearly the whole hour in the chair at gunpoint. Casteel twice warned Eitzen someone would be watching her. Casteel's warnings were effective. Before the robbers left, Casteel told Eitzen not to move or look out the windows to see what the robbers were doing. Eitzen stayed in the chair for about forty-five minutes to an hour after the robbers left because she "was scared that they were out there and may even shoot [her] or something."

When she finally felt safe enough to get up, Eitzen tried to use the phone but the line was dead. Eitzen later found her cell phone in a cup of water. Eitzen then looked out the window to see if her car was still in the driveway where she parked it—twenty feet from the house. The car was gone. The robbers had taken Eitzen's keys from her purse without her knowledge and driven Eitzen's car away as she sat in the house. The Casteels later abandoned Eitzen's car in a cornfield.

Deprived of her phone and car, Eitzen sought help by walking in the rain to the neighboring farm. Sometime after midnight, Eitzen reached her neighbor's farm and reported the robbery to the Page County, Iowa Sheriff's office. Deputy Jake Daly arrived at the farm at approximately 1:30 a.m. and found Eitzen frightened and crying. After taking Eitzen's report, Deputy Daly went to Eitzen's house and found the home ransacked.

The next day, an unrelated firearms investigation connected Casteel and Tiran to the Eitzen robbery. On September 12, 2008, at approximately 10:00 a.m., Casteel and Tiran purchased two firearms and a trailer from an undercover officer from the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF). ATF officers arrested Tiran for being a felon in possession of a firearm and Casteel for aiding and abetting the transaction.

After the arrests, the officers obtained a warrant and searched the back of the Casteels' Pontiac Bonneville. In the back seat of the car, the officers found numerous

collectible coins in bags, coin boxes, and collector's cases. The officers contacted local sheriff's offices about the suspicious coins and learned of the robbery of Eitzen's home. Further investigation revealed some of the coins were in envelopes with Eitzen's late husband's handwriting on them. An Omaha coin dealer, who law enforcement officers asked to appraise the coins, also identified the coins as coming from Eitzen's collection.

Officers found more coins when they executed a search warrant at the house Casteel and Tiran shared with Anna Dawn Hutt, Tiran's girlfriend. Officers also seized a note near the computer with the word "coins" and a map that officers described as a "back way" to Eitzen's house through farm fields. Forensic analysis of the computer revealed internet searches for information on the Eitzens before the robbery and downloaded images of collectible coins the day after the robbery.

Outside Hutt's house, officers found an all-terrain vehicle (ATV) with burglary tools and fresh vegetation on it. Hutt reported the Casteels left on the ATV about an hour before the robbery, heading in the general direction of Eitzen's farm. When Hutt asked what they were doing, Tiran told her to "mind [her] own f- - - - - - business." Later, Tiran telephoned Hutt to ask if there were any police near the house.

Nathan Wilcoxson, Hutt's son, described taking part in a "dry run" with the Casteels before the robbery. Wilcoxson testified Tiran recruited him to control Eitzen during the robbery. According to Wilcoxson, Tiran instructed him "[a]fter the door was kicked in [Wilcoxson] was supposed to run to [Eitzen's] chair and hold her down while the other person went upstairs and got the coins." If Eitzen resisted, Wilcoxson was to do "[a]nything in [his] power" to make her comply, including "[p]istol-whip her, hit her." Wilcoxson accompanied the Casteels to Eitzen's farm, but they aborted the robbery when they saw the lights were already off. The plan required Eitzen to be awake.

Another prospective recruit, Timothy Blank, testified Tiran discussed traveling by four-wheeler to the house of some people so they could rob them of their coins and gold at gunpoint. Tiran warned Blank that if the victims recognized the robbers, they would have to kill them.

After his arrest, Tiran contacted Wilcoxson to ask for help preventing Eitzen from testifying. The government introduced transcripts of telephone calls and letters from Tiran that Wilcoxson understood to mean Tiran wanted Wilcoxson to kill or otherwise harm Eitzen or arrange for someone else to do it. Tiran also spoke with his cellmate, Anthony Formaro, about arranging to have Eitzen "eliminated from existence on this earth." Tiran's detailed plans for eliminating Eitzen included pushing her down the stairs or electrocuting her in the bathtub with a radio.

On February 19, 2009, a grand jury charged Casteel in five counts of a nine-count third superseding indictment that also charged Tiran. Count 2 charged Casteel with knowingly disposing of a firearm to a felon in violation of 18 U.S.C. §§ 922(d) and 924(a)(2). Count 4 charged Casteel and Tiran with carjacking in violation of 18 U.S.C. §§ 2119 and 2. Counts 5 and 7 respectively charged Casteel and Tiran with knowingly and intentionally using or carrying a firearm and brandishing that firearm in relation to a violent federal crime for carjacking and robbery in violation of 18 U.S.C. §§ 924(c)(1)(A)(i) and (ii). Count 6 charged Casteel and Tiran with affecting commerce by robbery in violation of 18 U.S.C. §§ 1951 and 2. The remaining counts charged Tiran with being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2), and 2, obstruction or attempted obstruction of justice in violation of 18 U.S.C. § 1503, and tampering with a witness by attempting to kill in violation of 18 U.S.C. § 1512(a)(1)(A).

Before trial, Casteel moved to sever his trial from Tiran's, arguing (1) the evidence of Tiran's obstruction of justice and witness tampering would severely prejudice Casteel because the jury would not be able to compartmentalize the evidence,

-5-

and (2) a joint trial might prevent him from calling Tiran as a witness. The district court denied the motion, but granted Casteel's separate motion to sever the weapons charges from the robbery charges and dismissed Counts 6 and 7. Casteel also moved in limine to exclude evidence of the July 27, 2008 burglary and Casteel's sales of collectible coins beginning the next day. The district court denied that motion before trial.

On November 16, 2009, the district court began a five-day jury trial of Casteel and Tiran on Counts 4 and 5. Tiran also stood trial on the obstruction and witness tampering charges. The jury convicted Casteel and Tiran on all counts. Casteel filed two motions for a new trial, both of which were denied. On October 21, 2010, the district court sentenced Casteel to consecutive sentences of 78 months imprisonment on Count 4 and 84 months imprisonment on Count 5, with concurrent three-year terms of supervised release. This appeal followed.

## II.    DISCUSSION
### A.    Motion to Sever

Casteel contends the district court abused its discretion by denying his motion to sever his trial from Tiran's. See Fed. R. Crim. P. 8(b), 14. "We will not reverse a denial of a motion to sever unless the appellant demonstrates an abuse of discretion resulting in clear prejudice." United States v. Payton, 636 F.3d 1027, 1036 (8th Cir. 2011) (quoting United States v. Sandstrom, 594 F.3d 634, 642 (8th Cir. 2010) (internal quotation marks omitted)). "Only in an unusual case will the prejudice resulting from a joint trial be substantial enough to outweigh the general efficiency of joinder." United States v. Al-Esawi, 560 F.3d 888, 891 (8th Cir. 2009). This is not such a case.

"When defendants are properly joined, there is a strong presumption for their joint trial, as it gives the jury the best perspective on all of the evidence and therefore increases the likelihood of a correct outcome." United States v. Lewis, 557 F.3d 601, 609 (8th Cir. 2009) (quoting United States v. Flores, 362 F.3d 1030, 1039 (8th Cir.

2004) (internal quotation marks omitted)). "This presumption can only be overcome if the prejudice is 'severe or compelling.'" Id. (quoting United States v. Crumley, 528 F.3d 1053, 1063 (8th Cir. 2008)).

"To demonstrate the severe or compelling prejudice necessary to show that the court abused its discretion in denying severance, a defendant must show that his defense was irreconcilable with that of the codefendant or that the jury was unable to compartmentalize the evidence." Id. (quoting United States v. Basile, 109 F.3d 1304, 1310 (8th Cir. 1997) (internal quotation marks omitted)). "The defendant carries a heavy burden in making this showing." Payton, 636 F.3d at 1037 (quoting Sandstrom, 594 F.3d at 644) (internal quotation marks omitted)).

Casteel contends the evidence required to convict his father of obstruction of justice and witness tampering by attempting to kill was so "alarming" that "no jury [could] reasonably be expected to 'compartmentalize the evidence.'" In Casteel's view, "[t]he jury clearly relied on this evidence to convict . . . Casteel based upon the speculation that both defendants must have committed the crime or else there would be no reason for Tiran . . . to try and eliminate the primary government witness against them."

"In assessing the jury's ability to compartmentalize the evidence against joint defendants, we consider the complexity of the case, whether any of the defendants was acquitted, and the adequacy of the jury instructions and admonitions to the jury." Lewis, 557 F.3d at 610 (quoting United States v. Ghant, 339 F.3d 660, 666 (8th Cir. 2003) (internal quotation marks omitted)). This is not a complex case. Casteel and Tiran jointly robbed Eitzen at gunpoint and stole her car. Both were charged with and convicted of two counts related to that conduct. While in custody, Tiran tried to have Eitzen killed to prevent her testimony. Only Tiran was charged with obstruction of justice and witness tampering. The evidence for those counts consisted of Tiran's letters, recorded phone conversations, and statements to his cellmate.

The government does not deny the evidence of Tiran's efforts to silence Eitzen may have harmed Casteel's defense. But "[s]everance is not required merely because evidence which is admissible only against some defendants may be damaging to others." United States v. Delpit, 94 F.3d 1134, 1143 (8th Cir. 1996). "The Supreme Court has made it clear that the risk of prejudice posed by joint trials is best cured by careful and thorough jury instructions like those given by the [d]istrict [c]ourt in this case." Id. at 1144 (citing Zafiro v. United States, 506 U.S. 534, 540-41 (1993)).

The district court instructed the jury to "[k]eep in mind that you must give separate consideration to the evidence about each charge against each Defendant." The district court further instructed that testimony about Tiran's attempts to influence Eitzen "[did] not relate to [Casteel] in any way at all, and must not be used against him for any purpose whatsoever." Casteel contends the district court's instructions were insufficient because his familial relationship with Tiran made it "impossible for the jury to separate the two defendants." But we have rejected the contention that a father–son relationship renders a "joint trial so prejudicial as to require severance." Lewis, 557 F.3d at 611 n.3.

Casteel fails to demonstrate any prejudice he may have suffered was "substantial enough to outweigh the general efficiency of joinder." Al-Esawi, 560 F.3d at 891. The district court addressed the risk of prejudice by providing careful and thorough jury instructions and did not abuse its discretion by declining to sever the trials.

## B.    Sufficiency of the Evidence

Casteel next argues his convictions for carjacking and the related weapons charge were contrary to the weight of the evidence. See Fed. R. Crim. P. 29. "We review *de novo* the sufficiency of the evidence, viewing the evidence in the light most favorable to the jury verdict and giving the verdict the benefit of all reasonable inferences." United States v. Birdine, 515 F.3d 842, 844 (8th Cir. 2008). "We reverse

only if no reasonable jury could have found the defendant guilty beyond a reasonable doubt." Id.

> [T]o obtain a conviction under [18 U.S.C. § 2119], the government must prove three basic elements: (1) the defendant took or attempted to take a motor vehicle from the person or presence of another by force and violence or by intimidation; (2) the defendant acted with the intent to cause death or serious bodily harm; and (3) the motor vehicle involved has been transported, shipped, or received in interstate or foreign commerce.

United States v. Wright, 246 F.3d 1123, 1126 (8th Cir. 2001). Casteel contends the government failed to prove (1) Eitzen's car was taken from her presence, and (2) Casteel acted with the requisite intent. We disagree.

### 1.    Eitzen's Presence

Casteel contends "[t]here is no evidence" he took Eitzen's car from her presence because the Casteels did not demand Eitzen's keys and she was initially unaware they took her keys from her purse and stole her car. Section 2119 does not define the phrase "from the person or presence of another" and we have not decided the meaning of the phrase as it relates to carjacking. Interpreting the identical phrase in the general robbery statute, 18 U.S.C. § 2111, we explained "[p]roperty is in the presence of a person if it is so within his [or her] reach, inspection, observation or control, that he [or she] could if not overcome by violence or prevented by fear, retain his [or her] possession of it." United States v. W.T.T., 800 F.2d 780, 782 (8th Cir. 1986) (quoting United States v. Burns, 701 F.2d 840, 843 (9th Cir. 1983) (per curiam) (upholding the robbery conviction of a defendant who threatened a man at gunpoint inside a store to obtain his keys, and "then took the keys and car just outside" the store) (internal marks omitted)).

Relying on <u>Burns</u> and its progeny, every circuit court to consider this issue has determined the presence requirement of the carjacking statute may be satisfied when the victim of the carjacking is inside a building and the stolen car is parked outside. <u>See</u> <u>United States v. Savarese</u>, 385 F.3d 15, 19-20 (1st Cir. 2004); <u>United States v. Davis</u>, 233 F. App'x 292, 295 (4th Cir. 2007) (unpublished per curiam); <u>United States v. Boucha</u>, 236 F.3d 768, 771-74 (6th Cir. 2001); <u>United States v. Lopez</u>, 271 F.3d 472, 486 (3d Cir. 2001); <u>United States v. Edwards</u>, 231 F.3d 933, 936-37 (5th Cir. 2000); <u>United States v. Moore</u>, 198 F.3d 793, 797 (10th Cir. 1999); <u>United States v. Kimble</u>, 178 F.3d 1163, 1166-67 (11th Cir. 1999); <u>United States v. Murray</u>, 56 F.3d 74 (9th Cir.1995) (unpublished); <u>cf.</u> <u>United States v. Rockenback</u>, 136 F. App'x 950, 952 (8th Cir. 2005) (unpublished per curiam) (concluding a defendant who broke into the victim's apartment, disabled the phone, stole her keys from the counter, and entered the victim's car outside did not qualify for a sentence reduction for mere attempt to carjack in violation of § 2119 because the defendant "had completed the acts to take control of the car from [the victim]").

"Nevertheless, these cases make clear that the presence requirement is not boundless. In the carjacking context, courts have required the victim to have *both* a degree of physical proximity to the vehicle and an ability to control or immediately obtain access to the vehicle." <u>Savarese</u>, 385 F.3d at 20.

The reasoning of the other circuits is persuasive and consistent with our related precedent. We hold a motor vehicle is in a person's presence for purposes of § 2119 "if it is so within his [or her] reach, inspection, observation or control, that he [or she] could if not overcome by violence or prevented by fear, retain his [or her] possession of [the vehicle]." <u>Burns</u>, 701 F.2d at 843.

Viewing the evidence in this case in the light most favorable to the jury verdict and giving the verdict the benefit of all reasonable inferences, we conclude a reasonable jury could find Casteel took Eitzen's vehicle from her presence. Before the

robbery, Eitzen's keys were in her purse, inside her home. Her car was in her driveway. Eitzen controlled both until the Casteels broke into her home and robbed her at gunpoint. With Eitzen forcibly confined to a chair, the Casteels stole Eitzen's keys from her purse and her car from her driveway—just twenty feet from her house where she sat. Had Eitzen not been under Casteel's control and afraid to move from the chair, "she could have easily walked out the door . . . and driven away in her car, thus preventing [Casteel] from taking it," Moore, 198 F.3d at 797, or called for help. See also Kimble, 178 F.3d at 1168 ("[The victim's] car was . . . parked right outside the restaurant. Had [the victim] not been in fear for his safety, he could have reached the car and prevented its taking."). And Casteel's actions also deprived Eitzen of the availability of her car when she needed transportation to seek help from her neighbor, requiring Eitzen to walk a considerable distance in the rain. Casteel's assertion that "[t]he evidence does not support a finding that the motor vehicle was in [Eitzen's] reach, observation or control" fails.

We also reject Casteel's unsupported contention that the presence requirement of § 2119 was not met because Eitzen was initially unaware the Casteels had stolen her keys. Even if we assume Eitzen's knowledge is relevant to the presence element, the evidence of Eitzen's knowledge was sufficient to support the verdict. Eitzen was aware she was being robbed by two armed men. During the robbery, Eitzen's conversation with Casteel made her wonder if Casteel planned to take her car and dump it, and maybe her too, in the river.

As soon as Eitzen felt free to move after the robbers left, she looked out the window to see if they had stolen her car. The Casteels' use of force, intimidation, and threats of violence held Eitzen frozen in her chair, preventing her from discovering the theft and taking steps to stop it. That Casteel's actions rendered Eitzen temporarily unaware her car was stolen does not make it unreasonable for the jury to find him guilty of carjacking.

## 2. Intent

Casteel also contends the government failed to adduce sufficient evidence he acted with intent to cause death or serious bodily harm to Eitzen. According to Casteel, "[t]here is no evidence of any clear or veiled threat concerning the motor vehicle" and "no evidence that either o[f] the defendants made any allegation concerning harm to be caused upon . . . Eitzen if she did not relinquish control of the motor vehicle or its keys."

"The intent requirement of § 2119 is satisfied when the Government proves that at the moment the defendant demanded or took control over the driver's automobile the defendant possessed the intent to seriously harm or kill the driver if necessary to steal the car." Holloway v. United States, 526 U.S. 1, 12 (1999). "[A]n empty threat, or intimidating bluff . . . standing on its own, is not enough to satisfy § 2119's specific intent element." Id. at 11 (footnote omitted).

Though not overwhelming, the evidence adduced at trial was sufficient to enable a reasonable jury to conclude that, at the moment Casteel took Eitzen's car, he intended to kill Eitzen or cause her serious bodily injury if necessary. The Casteels arrived at Eitzen's home late at night when they expected her to be alone. With weapons drawn, they banged on the door and demanded entry. When the elderly Eitzen was slow to comply with their commands, they shattered the glass and forced their way inside. Casteel then held Eitzen at gunpoint while Tiran ransacked her house looking for the coins and anything else of value. While guarding Eitzen, Casteel made a vague reference to the river that Eitzen understood to be a possible threat on her life.

Wilcoxson and Blank testified that, in trying to recruit them to join the robbery, Tiran instructed them to be prepared to use physical violence or even kill Eitzen if necessary to carry out the plan and keep them from getting caught. Because Eitzen complied with his commands, Casteel's intent was never put to the test, but the rest of his actions were consistent with the plan Wilcoxson and Blank described.

When they left, the Casteels ordered Eitzen to stay in the chair and threatened her that someone would be watching. Eitzen was frightened enough by the threat to stay in the chair for at least forty-five minutes. It was reasonable for the jury to infer from this evidence that Casteel intended to kill or seriously injure Eitzen if necessary to take Eitzen's car and make a clean getaway. The intent requirement of § 2119 was met.

### C.    New Trial

Finally, Casteel argues the district court abused its discretion by denying his motion for a new trial, resulting in "a serious miscarriage of justice." See Fed. R. Crim. P. 33; Ferguson v. United States, 484 F.3d 1068, 1074 (8th Cir. 2007) (standard of review). In addition to reasserting his sufficiency of the evidence and severance arguments, Casteel asserts the district court abused its discretion under Fed. R. Evid. 401 and 403 in admitting evidence he sold coins in St. Joseph, Missouri. Casteel maintains the evidence created "an unfair inference" Casteel committed the robbery, required the jury to speculate, confused the issues, and was irrelevant.

The government responds (1) the evidence was "prejudicial to Casteel" but "not unfairly so," and (2) the evidence of Casteel's coin sales was properly admitted, either directly or under Rule 404(b), to prove the robbers' identity based upon their familiarity with Eitzen's home and her husband's coin collection. See United States v. Adams, 604 F.3d 596, 599 (8th Cir. 2010) (explaining evidence that is probative of an element of the crime charged is not subject to Fed. R. Evid. 404(b)'s limitations on evidence of prior bad acts). We agree.

"The district court enjoys broad discretion to admit evidence of other crimes. . . . [We] reverse only when such evidence clearly had no bearing on the case and was introduced solely to prove the defendant's propensity to commit criminal acts." United States v. Thomas, 593 F.3d 752, 757 (8th Cir. 2010) (quoting United States v. Thomas,

398 F.3d 1058, 1062 (8th Cir. 2005) (internal quotation marks omitted)).  There is neither an abuse of discretion nor a miscarriage of justice here.

## III.  CONCLUSION

We reject Casteel's challenges and affirm his conviction.

_____