# United States Court of Appeals
## For the Eighth Circuit

_____

No. 17-3750

_____

United States of America

*Plaintiff - Appellee*

v.

Darius Devon Nickelous

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Northern District of Iowa - Waterloo

_____

Submitted: November 15, 2018
Filed: February 26, 2019

_____

Before BENTON, BEAM, and ERICKSON, Circuit Judges.

_____

BENTON, Circuit Judge.

Darius D. Nickelous was convicted of unlawfully possessing a firearm in violation of 18 U.S.C. §§ 922(g)(1), 922(g)(3), 922(g)(9), and 924(a)(2). The district

court[1] sentenced him to 120 months' imprisonment. He appeals his conviction. Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

I.

Nickelous was convicted of unlawfully possessing a firearm after a shooting at a fraternity party. He claims the district court erred in denying his motion for judgment of acquittal because the evidence was insufficient. This court reviews de novo the "denial of a motion for judgment of acquittal." *United States v. Roberts*, 881 F.3d, 1049, 1052 (8th Cir. 2018). The evidence is viewed "in the light most favorable to the jury verdict and giving the verdict the benefit of all reasonable inferences." *United States v. Casteel*, 663 F.3d 1013, 1019 (8th Cir. 2011). Reversal is appropriate "only if no reasonable jury could have found the defendant guilty beyond a reasonable doubt." *Id.*

Nickelous stipulated to all elements of conviction except possession of a firearm. *See United States v. Anderson*, 78 F.3d 420, 422 (8th Cir. 1996) (to convict "under 18 U.S.C. § 922(g)(1), the government had to show beyond a reasonable doubt that (1) he had been convicted of a felony; (2) he thereafter possessed a firearm; and (3) the firearm had traveled in or affected interstate commerce"). The government produced as evidence of possession: (1) Nickelous admitted attending a fraternity party and having an altercation there; (2) his former classmate testified she heard a gunshot at the party and then saw Nickelous, wearing a red sweatshirt, waving a silver revolver; (3) two other people at the party—one a security guard and the other a member of the Army National Guard—testified the shooter was wearing a red sweatshirt; (4) a police officer testified that multiple partygoers reported a shooting by a man wearing a red sweatshirt; (5) another officer, who found Nickelous 200 feet

---

[1]The Honorable Linda R. Reade, United States District Judge for the Northern District of Iowa.

from the party (wearing a red sweatshirt), testified that he saw Nickelous drop a metal object next to a pickup truck; (6) the officer testified that Nickelous refused to stop when ordered; (7) the officer found a silver revolver in the spot where Nickelous dropped the object; and (8) when officers apprehended Nickelous, his hand was bleeding, and he said he had "gotten his ass kicked at the party."

Nickelous questions his classmate's credibility, arguing her testimony is biased and based on "assumptions and prejudices." However, "[t]his court does not weigh the credibility of the witnesses or the evidence. The jury has the sole responsibility to resolve conflicts or contradictions in testimony, and credibility determinations are resolved in favor of the verdict." *United States v. Aldridge*, 664 F.3d 705, 715 (8th Cir. 2011) (internal citation omitted).

Nickelous also challenges the conviction because there was no physical evidence. But "there is sufficient evidence to support a conviction for felon in possession where a gun was immediately recovered from the location where the defendant was observed dropping something." *United States v. Jefferson*, 206 Fed. Appx. 654, 655 (8th Cir. 2006). *See United States v. Bailey*, 831 F.3d 1035, 1039 (8th Cir. 2016) (holding evidence was sufficient where a firearm was recovered "along the route" of defendant's flight within 45 minutes of his apprehension); *United States v. Light*, 406 F.3d 995, 997-98 (8th Cir. 2005) (holding evidence was sufficient where police "recovered a gun from the alley" where defendant was apprehended even though no one saw him drop it or "kept an eye on the spot where the gun was found").

The district court did not err in finding the evidence sufficient to convict.

II.

Nickelous argues the district court erred in excluding expert testimony on eyewitness identification. "This court reviews the exclusion of expert testimony for abuse of discretion." *United States v. Martin*, 391 F.3d 949, 954 (8th Cir. 2004). "Expert testimony is admissible only if the expert 'is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue.'" *Id.*, *quoting* *Daubert v. Merrell Dow Pharm.*, 509 U.S. 579, 592 (1993); **Fed. R. Evid. 702**. The district court "has broad discretion" in balancing the reliability and probative value of evidence "against its prejudicial effect." *United States v. Kime*, 99 F.3d 870, 883 (8th Cir. 1996).

Nickelous's expert opined that there was "a high probability that without conscious intent" and "no intentional bias," the classmate "misconstrued some other object like a phone as a gun." The district court excluded the proposed testimony because it would not assist the trier of fact. "The evaluation of eyewitness testimony is for the jury alone. It is the exclusive province of the jury to determine the believability of a witness. . . . An expert is not permitted to offer an opinion as to the believability or truthfulness of a victim's story." *Id*. at 884 (internal quotation marks omitted). Defense counsel is "capable of exposing to the jury any potentially unreliable bases underlying" the eyewitness identification "through cross examination." *Id.*

The district court also excluded the evidence because its limited relevance was outweighed by the danger of misleading the jury. As in *Kime*, "the district court properly recognized the very real danger that the proffered expert testimony could either confuse the jury or cause it to substitute the expert's credibility assessment for its own." *Id.* The district court did not abuse its discretion in excluding the testimony here, especially because the conviction did not rest solely on the classmate's eyewitness testimony. *See United States v. Davis*, 260 F.3d 965, 970 (8th

-4-

Cir. 2001) (holding that, like here, the district court did not err by excluding an eyewitness identification expert because this court is "especially hesitant to find an abuse of discretion unless the government's case against the defendant rested exclusively on uncorroborated eyewitness testimony").

* * * * * * *

The judgment is affirmed.

ERICKSON, Circuit Judge, concurring.

I concur in the Court's opinion but write separately to note an area of concern. During the two decades that have elapsed since we decided United States v. Kime, 99 F.3d 870 (8th Cir. 1996), significant developments have occurred in our understanding of memory science. The American Psychological Association has taken the position in *amicus* filings that the reliability of witness memory can be influenced by many factors that may not be readily apparent to lay persons. See Brief for American Psychological Association as Amicus Curiae Supporting Petitioner, Perry v. New Hampshire, 565 U.S. 228 (2012) (No. 10-8974), 2011 WL 3488994; see also Brief for American Psychological Association as Amicus Curiae Supporting Appellant, Commonwealth v. Walker, 92 A.3d 766 (Pa. 2014) (No. 28 EAP 2011), 2011 WL 7784187. Cognitive psychologists have reminded courts that the popular conception of memory is often incorrect, noting that when we "experience an important event, we do not simply record it in our memory as a videotape recorder would." Elizabeth F. Loftus, et al., *Eyewitness Testimony: Civil and Criminal* § 2-2, at 12 (4th ed. 2007). The relationship between eyewitness observations and the reliability of testimony in legal systems has been an area of intense interest in recent years and, as the science develops, so too will our application of the science. See, e.g., United States v. Bartlett, 567 F.3d 901, 906 (7th Cir. 2009) ("It will not do to reply that jurors know from their daily lives that memory is fallible. The question that

social science can address is *how* fallible, and thus how deeply any given identification should be discounted.").

I agree that, under the facts as developed in this case, the district court did not abuse its discretion by excluding Dr. Maclin's testimony. I note, however, that some of our prior language in <u>Kime</u> may be overbroad in light of the developing science. District judges would be well served to consider each case individually and not rush headlong into the conclusion that proffered expert testimony should be excluded in all (or even most) cases because of its potential to confuse the jury, invade the province of the jury, or because defense counsel is capable of exposing to the jury any potentially unreliable bases underlying the eyewitness identification through cross examination.

Current scientific evidence reveals at least a controversy over whether or not the usual legal process for rooting out witness unreliability is satisfactory in the context of eyewitness identifications without fully informing the jury of the nature of memory—including through the use of expert testimony. As I believe the district court inquiry regarding admissibility in each case must be individualized and based on the facts actually presented, I simply note that district courts should consider carefully all of the circumstances before exercising their discretion to exclude such evidence. In this case, the district court developed a sufficient record to support its exercise of discretion. Under other circumstances, it might well be a better exercise of discretion to admit the proffered evidence.

———————————————