UNITED STATES of America, Appellee,

v.

**Donald Lavern CULBERT, Appellant.**

**No. 76–1860.**

United States Court of Appeals,
Ninth Circuit.

Feb. 23, 1977.

Rehearing and Rehearing En Banc
Denied May 27, 1977.

---

Frank O. Bell, argued, Asst. Federal Public Defender, San Francisco, Cal., for appellant.

John Lockie, Asst. U. S. Atty., San Francisco, Cal., Arthur F. Norton, argued, Atty., U. S. Dept. of Justice, Washington, D. C., for appellee.

Before ELY, CARTER and GOODWIN, Circuit Judges.

## OPINION

**PER CURIAM:**

Culbert was convicted, in a jury trial, of two offenses charged in an indictment consisting of two Counts. Count One charged an attempted bank robbery in violation of 18 U.S.C. § 2113(a) (Supp.1976). Count Two charged an attempt to obstruct, delay, and affect commerce by robbery, extortion, and threats of physical violence, in violation of 18 U.S.C. § 1951 (1970) (hereinafter the "Hobbs Act" or "Act"). We reverse.

Section 2113(a), germane to the first Count, specifies, as one of the elements of the pertinent offense, a taking or attempted taking "from the person or presence of another." The prosecution's evidence was to the effect that Culbert and an accomplice attempted to extort $100,000 from a bank by means of telephoned threats of physical violence. The instructions given to the bank's president were that he should drop the money at a specified site and then return to the bank. Thus, the criminal plan did not contemplate a trespassory taking "from the person or presence of" the bank president or any other person. Absent proof of that essential element of the offense charged in Count One, the judgment of conviction of the offense alleged in that Count must necessarily be vacated. *See United States v. Howard*, 506 F.2d 1131, 1133 (2d Cir. 1974); *United States v. Marx*, 485 F.2d 1179, 1182 (10th Cir. 1973), *cert. den.*, 416 U.S. 986, 94 S.Ct. 2391, 40 L.Ed.2d 764 (1974) (stating that § 2113(a) is not directed toward the crimes of extortion and obtaining of money by false pretenses). It should be noted that Government counsel, both in their written brief and in oral argument, conceded, with commendable candor, that Culbert's conviction on Count One

should be vacated for the reason above set forth.

■ For entirely distinct reasons, the conviction based upon Count Two of the indictment cannot stand. The Hobbs Act, in its present form, is a codification of a 1946 enactment which amended the so-called "Federal Anti-Racketeering Act of 1934." The legality of Culbert's conviction under the Hobbs Act depends upon whether the facts alleged and proved fall within the scope of the Act, which, in pertinent part, provides:

"(a) *Whoever in any way or degree* obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined not more than $10,000 or imprisoned not more than twenty years, or both.

(b) As used in this section—

\*    \*    \*    \*    \*    \*

(2) The term 'extortion' means the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right. . . . " (Emphasis supplied.)

The Sixth Circuit recently examined, with the utmost care, the legitimate scope of the Hobbs Act. *United States v. Yokley*, 542 F.2d 300 (6th Cir. 1976). The court there concluded that, "although an activity may be within the literal language of the Hobbs Act, it must constitute 'racketeering' to be within the perimeters of the Act." *Id.* at 304. A review of the Act's legislative history reveals, without question, that this was the Congressional intent; thus, we adopt the reasoning of the Sixth Circuit's eminently sensible opinion. Given the applicable *de minimis* burden on interstate commerce rule (*See United States v. Shackelford*, 494 F.2d 67, 75 (9th Cir.), *cert. denied*, 417 U.S. 934, 94 S.Ct. 2647, 41 L.Ed.2d 237 (1974) ) a contrary interpretation of the Act would justify federal usurpation of virtual-

ly the entire criminal jurisdiction of the states. Considerations of federalism, apart from the legislative history also emphasized in *Yokley*, cannot permit a conclusion that Congress intended to work such an extraordinary and unprecedented encroachment into the realm of state sovereignty.

■ Here, the facts do not suggest that the attempted extortion of the bank assets related, in any way, to "racketeering." Consequently, the offensive activity fell within the exclusive criminal jurisdiction of the state of California.

The judgments of conviction are

REVERSED.

JAMES M. CARTER, Circuit Judge, concurring and dissenting:

I concur in the reversal of Count 1 (Robbery), but dissent from the reversal of Count 2 (Extortion).

The plain and unambiguous language of the Hobbs Act (18 U.S.C. § 1951) prohibits any robbery or extortion or attempt to rob or extort which has the requisite effect on commerce. In *Stirone v. United States*, 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960), the Supreme Court noted:

"The [Hobbs] Act speaks in broad language, manifesting a purpose to use all the constitutional power Congress has to punish interference with interstate commerce by extortion, robbery, or physical violence. The Act outlaws such interference 'in any way or degree.'" *Id.* at 215, 80 S.Ct. at 272.

I must disagree with the majority, therefore, in their conclusion that the Hobbs Act is limited to "racketeering."

Even the legislative history of the Act does not so limit its coverage. Representative Hobbs described the purpose of his bill this way:

"This bill is grounded on the bedrock principle that crime is crime, no matter who commits it; and that robbery is robbery and extortion extortion. . . . It covers whoever in any way or degree interferes with interstate or foreign com-

merce by robbery or extortion." 89 Cong.Rec. 3217.

*See also United States v. Green,* 350 U.S. 415, 419, 76 S.Ct. 522, 100 L.Ed. 494 (1956) (amended Act designed to avoid narrow judicial construction of prior Act).

This court has previously recognized the broad reach of the Hobbs Act. In *Carbo v. United States,* 314 F.2d 718 (9 Cir. 1963), *cert. denied,* 377 U.S. 953, 84 S.Ct. 1625, 12 L.Ed.2d 498 (1964), the court stated:

> "Undeniably the act [sic] was particularly aimed at labor racketeering, but by its terms it is not so limited. Racketeering in other areas is clearly included. The language of the statute provides fair warning and adequate notice that extortion in any area is included so long as the necessary effect upon commerce results." 314 F.2d at 732.

This court also has previously affirmed, without discussion of the reach of the Act, the conviction of a person under the Hobbs Act for an attempted extortion from a bank

almost identical to the one in this case. *See United States v. Greiser,* 502 F.2d 1295 (9 Cir. 1974). I believe we should follow these precedents.

The majority states that upholding the extortion conviction on Count 2 "would justify federal usurpation of virtually the entire criminal jurisdiction of the states" and would constitute "an extraordinary and unprecedented encroachment into the realm of state sovereignty."

The majority ignores the extent to which Congress has relied on interstate and foreign commerce to provide a jurisdictional basis for criminal statutes. *See, e. g.,* the Dyer Act (18 U.S.C. § 2312); the Mann Act (18 U.S.C. §§ 2421–24); transportation of firearms by an ex-convict, fugitive, or drug user or addict (18 U.S.C. § 922(g)(1), (2), and (3)). Congress has enacted a long list of statutes based on the Commerce clause.[1] The majority's comment of "usurpation" and "unprecedented encroachment" is an exaggeration, to say the least, in view of these many statutes.[2]

---

1.  18 U.S.C. § 32. Destruction of aircraft or aircraft facilities;
    18 U.S.C. § 33. Destruction of motor vehicles or motor vehicle facilities;
    18 U.S.C. §§ 42 and 43. Importation of mammals, birds and fish;
    18 U.S.C. § 224. Bribery in sporting events;
    18 U.S.C. § 231. Civil disorders;
    18 U.S.C. § 542. Entry of goods into commerce by false statements;
    18 U.S.C. § 545. Smuggling or importing goods into the United States;
    18 U.S.C. § 546. Smuggling goods into foreign countries;
    18 U.S.C. § 659. Thefts from interstate or foreign commerce;
    18 U.S.C. § 660. Offense by officer or director of corporations engaged in commerce;
    18 U.S.C. § 832. Transportation of explosives, etc. in commerce;
    18 U.S.C. § 833. Marking packages containing explosives;
    18 U.S.C. §§ 834, 836, and 837. Violation of regulations of I.C.C.;
    18 U.S.C. § 875. Transportation of demand for ransom or reward;
    18 U.S.C. §§ 921 and 922. Firearms;
    18 U.S.C. §§ 1073 and 1074. Travel in commerce to avoid prosecution or giving testimony;
    18 U.S.C. § 1084. Wagering information transmitted in commerce;
    18 U.S.C. §§ 1201 and 1202. Kidnapping, ransom;

    18 U.S.C. § 1231. Transportation of strike-breakers;
    18 U.S.C. § 1301. Importing or transporting lottery tickets;
    18 U.S.C. § 1407. Narcotic addict or violator—border crossing;
    18 U.S.C. §§ 1461–65. Obscenity;
    18 U.S.C. § 1761. Transportation or importation of prison goods;
    18 U.S.C. § 1821. Transportation of dentures;
    18 U.S.C. §§ 1951 and 1952. Hobbs Act (the statute here involved);
    18 U.S.C. § 1953. Transportation of wagering paraphernalia;
    18 U.S.C. § 1992. Train wrecking;
    18 U.S.C. § 2101. Riots;
    18 U.S.C. § 2117. Breaking or entering carrier facilities;
    18 U.S.C. §§ 2311–17. Transportation of stolen property;
    18 U.S.C. § 2510, *et seq.* Wire interception.

2.  Many of the statutes have a companion section on lack of preemptive intent by Congress. 18 U.S.C. § 233 is a good example.

    > "Nothing contained in this chapter shall be construed as indicating an intent on the part of Congress to occupy the field in which any provisions of the chapter operate to the exclusion of State or local laws on the same subject matter, nor shall any provision of this chapter be construed to invalidate any provision of State law unless such provision is

A second basis for jurisdiction, interference with a federal function or officer, underlies an equally large number of federal statutes. Examples are bankruptcy offenses (18 U.S.C. §§ 151–55); postal offenses (18 U.S.C. §§ 1691–734); and offenses involving federally insured banks and building and loan associations (18 U.S.C. § 2113). Together, crimes involving interstate and foreign commerce or interference with a federal function or officer encompass most federal crimes.[3]

The true question in this case is whether a federally insured national bank is involved in interstate commerce so as to fall within the jurisdictional parameters of this federal criminal statute. It is obvious that the banking industry vitally affects interstate commerce. Furthermore, a federally insured national bank specifically comes within the statutory definition of commerce because the United States has exclusive jurisdiction over banks and banking by virtue of Title 12 of the United States Code. Congress has evidenced its concern over crimes against banks by passing a specific bank robbery statute, 18 U.S.C. § 2113.

The section begins: "§ 2113 *Bank robbery and incidental crimes.*" Various crimes are listed in addition to robbery, e. g., attempts, entry to commit a robbery, stealing money or property of the bank, receiving or dealing with the money or property stolen or carried away from the bank, and assaults in committing either robbery (subsection (a)) or theft (subsection (b)).

However, the Congress, in enacting 18 U.S.C. § 2113, did not deal specifically with extortion. *See United States v. Marx*, 485 F.2d 1179 (10 Cir.), *cert. denied*, 416 U.S. 986, 94 S.Ct. 2391, 40 L.Ed.2d 764 (1973).

We need not today decide whether every extortion occurring in interstate or foreign commerce should be included within the scope of the Hobbs Act. In our case, a federally insured bank is involved. It is the kind of a federal institution customarily protected by federal statutes from interference. It is also engaged in interstate commerce. Hence, it warrants protection against attempted extortion more than an ordinary commercial institution. It is no great extension of federal jurisdiction to hold that the extortion conviction on Count 2 is valid.

Our court is not bound by *United States v. Yokley*, 542 F.2d 300 (6 Cir. 1976), relied upon by the majority. Moreover, the case is distinguishable. It involved an actual robbery of a "K-Mart" department store. Federal jurisdiction has not been extended (except as possibly extended by the Hobbs Act) to protection of department stores. Protection of a federally insured national bank is quite a different thing.

The majority's position results in an anomaly in the coverage by our criminal statutes. A successful extortionist, if not subject to prosecution under the Hobbs Act, could only be convicted of bank larceny under 18 U.S.C. § 2113(b), with the threats of violence going unpunished. Such a person would be subject to the 10-year maximum penalty under 18 U.S.C. § 2113(b), rather than the 20-year penalty under 18 U.S.C. § 2113(a) when force is used. And one who unsuccessfully attempts extortion against bank property, as here, could not be prosecuted at all under any federal statute. I cannot believe Congress intended to have this glaring hole in our criminal law.

I would affirm the conviction on Count 2, but agree with the majority on Count 1 and would reverse that conviction.

inconsistent with any of the purposes of this chapter or any provision thereof."
Thus, Congress preserved state jurisdiction in the area while extending federal jurisdiction.

**3.** Additional bases for federal jurisdiction of crimes are (1) the tax power (*e. g.*, income tax offenses, tax on transfers of machine guns, etc.); and (2) maritime and territorial jurisdiction (18 U.S.C. §§ 7 and 13; 18 U.S.C. §§ 113–14).