12-2077 (L)
United States v. Soler & Waters

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

_____

August Term, 2013

(Argued: April 4, 2014          Decided: July 22, 2014)

Docket Nos. 12-2077-cr, 12-3831-cr

_____

UNITED STATES OF AMERICA,

*Appellee,*

—v.—

WILLIAM SOLER, SAMI WATERS,

*Defendants-Appellants.*

_____

B e f o r e:

KATZMANN, *Chief Judge*, WALKER and DRONEY, *Circuit Judges.*

_____

Appeal from two judgments of conviction entered by the United States District Court for the Eastern District of New York (Dearie, *J.*, and Gershon, *J.*) following jury trials in which Defendants-Appellants were found guilty of, *inter alia*, one count of carjacking in violation of 18 U.S.C. § 2119. Both defendants contend that the district court erred in denying their motions for a judgment of

acquittal as to the carjacking count because in forcibly taking the keys to an automobile parked on the curb outside the home in which the robbery took place, the defendants did not take an automobile from the "presence" of the victim as required by the carjacking statute. We join our fellow circuits in construing the term "presence" in the carjacking statute to accord with the meaning given to that term in the common law crime of robbery, and therefore hold that an automobile is taken from the victim's presence when the victim is sufficiently within reach, inspection, or observation of the vehicle that the victim could have retained his or her possession of it if not overcome by violence or prevented by fear. Because evidence at trial demonstrated that the taken automobile was sufficiently within the presence of the victim to satisfy this definition, we conclude that the district court properly denied the motions for acquittal.

JUDGMENTS AFFIRMED.
_____

RICHARD M. TUCKER (Emily Berger, W. David Sarratt, *on the brief*), Assistant United States Attorneys, *for* Loretta E. Lynch, United States Attorney for the Eastern District of New York, Brooklyn, NY, *for Appellee.*

DAVID A. LEWIS, Assistant Federal Public Defender, Federal Defenders of New York, Inc., New York, NY, *for Defendant-Appellant Soler.*

TINA SCHNEIDER, Portland, ME, *for Defendant-Appellant Waters.*

_____

KATZMANN, *Chief Judge*:

This appeal calls upon us to interpret language in the federal carjacking statute, 18 U.S.C. § 2119 (the "carjacking statute"), that defines how near a

robbery victim must be to his or her stolen automobile to render the robber criminally liable for carjacking. That is, this case requires us to decide what the federal carjacking statute means when it criminalizes the forcible taking of an automobile "from the person or presence" of the victim, *id*.

Defendant-Appellant William Soler, joined by his co-defendant Sami Waters,[1] contends that he should have been acquitted of carjacking because the statutory phrase "person or presence of another" should be read to describe only the area that is immediately near the victim. He asserts that because he robbed his victim of the keys to her automobile inside of her home—while her car was parked on a curb outside her home, beyond a closed front door and a tall fence— he is not criminally liable for the federal offense of carjacking.

Both Soler and Waters made this argument before Judges Dearie and Gershon, respectively, in motions for acquittal at the close of their trials, and each

---

[1] While Defendant-appellant Waters joins the relevant portions of Soler's brief regarding the issue of statutory interpretation we discuss in this opinion, we note that Waters's appeal principally argues that the district court erred in denying his motion to suppress certain evidence and erred in imposing sentence. We address those arguments in a summary order filed simultaneously with this opinion.

judge rejected their interpretive argument.[2] Judge Dearie held that the denial of

Soler's motion was a matter of "common sense," while Judge Gershon cited the

holding of several of our fellow circuits that "property is in the presence of a

person if it is so within his reach, observation, or control that he could, if not

overcome by violence or prevented by fear, retain possession of it," Waters App.

255. For the reasons that follow, we adopt the same interpretation of "presence"

as that endorsed by Judge Gershon and several of our fellow courts of appeals.

We therefore affirm both judgments.

BACKGROUND

For the purpose of advancing their interpretation of the carjacking statute

on appeal, the defendants do not dispute that evidence at their trials established

that on August 10, 2010, they entered a home in Brooklyn, New York, and

violently robbed the three residents therein of several things of value. As they left

the home, the defendants demanded that one of the residents give them the keys

---

[2] For reasons that are not relevant to this appeal, Soler and Waters were each tried separately for offenses charged in the same indictment. The indictment charged the defendants with carjacking, 18 U.S.C. § 2119 (Count 1); the unlawful use and brandishing of a firearm, 18 U.S.C. § 924(c)(1)(A)(ii) (Count 2); and being felons in possession of a firearm, 18 U.S.C. § 922(g)(1) (Count 3 as to Soler and Count 4 as to Waters, to account for a difference in the applicable penalty provisions).

4

to a car parked in front of the house. This victim testified that the car was parked on a curb "10 to 15 feet" or "a five second walk" from the front door to the house, Soler App. 51, and that while a person could have seen the car "from [the] front door," she "couldn't at th[e] moment [the defendants asked for the keys] because [she] was laying down," Soler App. 47. After the defendants demanded the keys, the victim retrieved her keychain from a shelf near the front door and handed it to them. She then sat near the two defendants as the two turned to flee the scene, though from her vantage point she was unable to observe the defendants' behavior as they left the home.

Photographs of the front of the home introduced into evidence show that the interior of the house in which the victim was robbed of her keys is separated from the street by a solid front door, a short driveway (the transiting of which would account for the "five second walk" described in the victim's testimony), a wrought iron fence, and a sidewalk. The victim also testified that the car could be unlocked from the front door using a remote attached to her keychain.

Both Soler's and Waters's counsel moved, pursuant to Federal Rule of Criminal Procedure 29, for acquittal as to the carjacking count as well as a related count charging the unlawful use of a firearm in violation of 18 U.S.C. § 924(c).

Judge Dearie deemed Soler's motion to have been made both at the close of the government's case and at the close of all the evidence, but did not decide the motion until the first day of sentencing.[3] In support of his motion, Soler argued that even though he had "knowingly participated in an uncharged home invasion robbery with his co-defendant, Sami Waters," his taking of the victim's keys inside her home and subsequent taking of her automobile outside her home did not satisfy the statutory requirement that the car be taken from the "person or presence of the victim." Soler App. 207. Judge Dearie denied Soler's motion, and sentenced him to three years' imprisonment on the carjacking count.

Judge Dearie explained from the bench that although this Court has not yet decided the issue, other courts have reached "the common sense conclusion that person or presence does [not] necessarily require the immediate presence of the

---

[3] Soler's sentencing proceedings began on March 28, 2012, but were adjourned. His sentence was eventually imposed on April 4, 2012.

victim." Soler App. 166.[4] Without elaborating a positive definition of "presence," the district court concluded that it would be a "silly result" to interpret "presence" so that the carjacking of a victim in a grocery store parking lot would no longer be carjacking if the victim were instead robbed of her keys after she walked into the grocery store. *See id.*

Judge Gershon denied a nearly identical motion in Waters's case. In an opinion explaining her decision, Judge Gershon correctly observed that "all circuits that have considered the issue have held that 'property is in the presence of a person if it is so within his reach, observation, or control that he could, if not overcome by violence or prevented by fear, retain possession of it,'" Waters App. 255, and that the facts of the defendants' robbery here involved no greater a distance between the victim and her automobile than several carjacking convictions affirmed by our fellow circuits. *See id.*

This appeal ensued, in which the defendants renew their argument that the victim's car was not within her "presence" when they forcibly took her keys from her inside her home.

---

[4] Although Judge Dearie indicated at sentencing that he would issue a written opinion denying Soler's Rule 29 motion, no such opinion appears in the record.

DISCUSSION

We review the district courts' interpretation of a federal statute *de novo*.

*United States v. Aleynikov*, 676 F.3d 71, 76 (2d Cir. 2012). We similarly review the

denial of a Rule 29 motion arguing sufficiency of the evidence *de novo*, *United*

*States v. Amico*, 486 F.3d 764, 780 (2d Cir. 2007), and view all evidence "in the light

most favorable to the government," *id*. That said, however, the defendants'

argument on appeal exclusively turns on which of the competing interpretations

of the statutory language of "presence" we adopt. There is no contention that the

evidence at the two trials was insufficient to meet the government's broader

definition of "presence," and the defendants acknowledge that their appeal relies

upon our willingness to construe (contrary to the district court) the statutory term

"presence" to mean "in front of, or in the area immediately around, a person." *See*

Br. for Defendant-Appellant Soler at 13. We therefore turn to the question of

statutory interpretation that is before us.

We begin with our traditional interpretive tools, turning first to the text of

the statute in an attempt to discern whether the plain and ordinary meaning of

the term "presence" settles the matter. *See Raila v. United States*, 355 F.3d 118, 120

8

(2d Cir. 2004) (noting that "[s]tatutory construction begins with the plain text, and, 'where the statutory language provides a clear answer, it ends there as well'") (quoting *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 438 (1999)).

In pertinent part, the carjacking statute imposes criminal penalties upon "[w]hoever, with the intent to cause death or serious bodily harm takes a motor vehicle that has been transported, shipped, or received in interstate or foreign commerce from the person or presence of another by force and violence or by intimidation, or attempts to do so." 18 U.S.C. § 2119. As many of our fellow courts of appeals have noted, the critical term—"presence"—does not yield a straightforward ordinary meaning. *See, e.g.*, *United States v. Kimble*, 178 F.3d 1163, 1166 (11th Cir. 1999). General purpose dictionaries published around the time of the statute's enactment define "presence" as "the part of space within one's ken, call, or influence: the vicinity of or the area immediately near one: the place in front of or around a person." Webster's Third New International Dictionary 1793 (1993). As is obvious from this definition, consulting the available dictionaries does not yield a meaning for "presence" that would decisively limit the statute's scope. Words like "ken," "vicinity," and "near" leave us with the same ambiguity

9

with which we started our inquiry. Indeed, as another contemporary dictionary explains, when the word "presence" is used with a possessive or the word "of," as in the carjacking statute, it communicates "a vague sense of the place or space in front of a person, or which immediately surrounds him." 12 Oxford English Dictionary 394 (2d ed. 1989). Just so in this very case, in which the ordinary meaning of "presence" is vague and fails to communicate a precise limitation upon the statute's prohibition.

The legislative history is just as equivocal with respect to the intended scope of the carjacking statute, and it is utterly silent as to the meaning of "presence." To be sure, the legislative history of the larger Anti Car Theft Act of 1992, Pub. L. No. 102-519, 106 Stat. 3384, of which the carjacking statute was a part, reflects Congress's preoccupation with a surfeit of "auto kleptomania . . . sweeping the nation," *Anti-Car Theft Act of 1992: Hearings Before the Subcomm. on Crime & Criminal Justice of the H. Comm. on the Judiciary*, 102d Cong. 1 (1991) (Opening statement of Rep. Schumer). Read in context with the aims of the broader Anti Car Theft Act, it is clear that in enacting the carjacking statute, Congress was legislating to address the ever-growing problem of auto theft in this

country. Thus the broader Anti Car Theft Act also aims to reduce trafficking in stolen vehicles by addressing the phenomena of "chop shops," "title washing," and export "rings" that use shipping containers to ship stolen cars abroad. *See* H.R. Rep. No. 102-851, pt. 1, at 14 (1992); *see also Kimble*, 178 F.3d at 1167–68 (noting the statute's purpose of curbing a "rash of car robberies" and explaining that "[j]ust as with other types of robbery, the victim's proximity . . . is a predicate of the crime"). That Congress had in mind the general problems of auto theft and auto robbery suggests that "presence" could be read to embrace a general class of robberies involving automobiles, even those that may seem to fall outside the prototypical meaning of "carjacking."

On the other hand, the legislative history that describes the particular mischief Congress sought to remedy in passing the carjacking statute makes repeated reference to what one would consider the ordinary meaning of "carjacking": that is, "[t]he stealing or commandeering of an occupied car by threatening the driver with violence," *carjacking, n.*, OED Online, www.oed.com (search "carjacking") (last visited May 9, 2014). At the forefront of this legislative history are repeated references to the shocking death of a mother who was

11

dragged to her death after her vehicle was carjacked in the Washington, D.C. area. *See, e.g.*, 138 Cong. Rec. 24809 (1992) (statement of Sen. Cohen); 138 Cong. Rec. 24914 (1992) (statement of Rep. Goss); 138 Cong. Rec. 25146 (1992) (statement of Rep. Bliley). Similarly, when Senator DeConcini rose to introduce a slightly different (and ultimately unsuccessful) bill that aimed to address carjacking, he began by describing the horrors of a crime "popularly known as carjacking," 138 Cong. Rec. 25672 (1992), in which a "car is stolen while the driver is behind the wheel," *id.* A few days thereafter, Senator Lautenberg lamented the "most disturbing . . . problem of violent carjackings" in which "thieves are using violence and intimidation to force drivers to give up their cars." 138 Cong. Rec. 27977 (1992).

Seizing upon these latter statements, Soler contends that the legislative history buttresses the conclusion that "presence" should take the ordinary meaning of something akin to "close proximity." On Soler's interpretation, the carjacking statute prohibits the taking of a car that is "in front of, or in the area immediately around" the victim. Br. for Defendant-Appellant Soler at 13.

12

Given the absence of any clearly probative discussion of "presence" within the legislative history, however, we are not persuaded that the legislative history resolves the interpretive question. Indeed, in addition to the overarching observation that the Anti Car Theft Act aimed to strike broadly at the problem of car theft that Congress perceived to be sweeping the nation, we also note the obvious fact that the statute does not adopt the language of "carjacking"—the term appears nowhere in the statute's language—and instead embraces the distinct language of "tak[ing] . . . from the person or presence of another by force and violence." As we shall now explain, these words, and legislative history explaining their appearance, suggest that the meaning of the word "presence" ought to be resolved in favor of the district courts' interpretation below.

By way of background, we note that we are not the first court of appeals to construe the term "presence" in the federal carjacking statute. Indeed, the government directs us to the decisions of no fewer than nine courts of appeals that have come to the conclusion that the broader definition employed by Judge Gershon is correct. *See United States v. Savarese*, 385 F.3d 15, 20 (1st Cir. 2004) (construing U.S.S.G. § 2B3.1(b)(5)); *United States v. Lake*, 150 F.3d 269, 272–73 (3d

Cir. 1998); *United States v. Davis*, 233 F. App'x 292, 295 (4th Cir. 2007) (per curiam); *United States v. Edwards*, 231 F.3d 933, 935–37 (5th Cir. 2000); *United States v. Boucha*, 236 F.3d 768, 771–74 (6th Cir. 2001) (construing U.S.S.G. § 2B3.1(b)(5)); *United States v. Casteel*, 663 F.3d 1013, 1019–21 (8th Cir. 2011); *United States v. Murray*, 56 F.3d 74, 1995 WL 295438, at \*6 (9th Cir. 1995) (unpublished table decision) (citing *United States v. Burns*, 701 F.2d 840, 843 (9th Cir. 1983) (per curiam)); *United States v. Brown*, 200 F.3d 700, 705 (10th Cir. 1999); *Kimble*, 178 F.3d at 1166–68.

While rejecting the typical tools of ordinary meaning, legislative history, and legislative purpose to aid its interpretation of the statute, the government asks us to adopt these other courts' interpretation of the carjacking and federal robbery statutes. Naturally, the decisions of our fellow courts of appeal inform our analysis, but we emphasize that these decisions do not bind us of their own force; they carry authoritative weight only insofar as they articulate persuasive reasons favoring a particular interpretation of the statute in question.

That said, however, it is a fair observation to suggest that the genesis of most courts' interpretation of the word "presence" in the federal carjacking

14

statute is not the standard methodology of statutory interpretation, but rather the gloss given to the term "presence" in the federal robbery statute, 18 U.S.C. § 2111 ("§ 2111"), by the Ninth Circuit's opinion in *United States v. Burns*, 701 F.2d 840 (9th Cir. 1983).[5] In *Burns*, the Ninth Circuit distinguished *United States v. Culbert*, 548 F.2d 1355 (9th Cir. 1977) (per curiam), in which it had interpreted "presence" in the similarly framed federal bank robbery statute, 18 U.S.C. § 2113 ("§ 2113"), to exclude bank robbery that was accomplished by the use of a telephone to make threats of physical violence to a bank employee.[6] After noting substantial criticism of its prior decision in *Culbert*, *see Burns*, 701 F.2d at 843 n.4, the Ninth Circuit approved of a jury instruction for the federal robbery statute (that is, § 2111) that provided that an item of property is "in the presence of a person if it is 'so within

[5] 18 U.S.C. § 2111, in pertinent part, proscribes the conduct of "whoever, within the special maritime and territorial jurisdiction of the United States, by force and violence, or by intimidation, takes or attempts to take *from the person or presence of another* anything of value" (emphasis added).

[6] The *Culbert* panel concluded that the attempt to extort $100,000 from a bank employee by instructing the employee to "drop the money at a specified site and then return to the bank" did not satisfy the statutory requirement that the taking be from the employee's "person or presence." 548 F.2d at 1356. *Culbert* is no longer good law, as the bank robbery statute has since been amended to expressly reach bank robberies that proceed by way of extortion. *See* Criminal Law and Procedure Technical Amendments Act of 1986, Pub. L. No. 99-646, § 68, 100 Stat. 3592, 3616 (amendment codified as amended at 18 U.S.C. § 2113(a)). The Ninth Circuit's decision was also reversed on other

his reach, inspection, observation or control, that he could if not overcome by violence or prevented by fear, retain his possession of it." *Burns*, 701 F.2d at 843. For the sake of clarity, we will refer to this holding as the *Burns* definition of "presence."

The Ninth Circuit's opinion in *Burns* gives little indication of the provenance of this definition, nor does it offer an interpretive argument about why this fairly elaborate definition ought to be read between the lines of Congress's use of the word "presence" in the federal robbery statute. Nevertheless, the *Burns* definition of "presence" in § 2111 is the touchstone for the many decisions of our sister circuits that have interpreted "presence" in § 2119, the federal carjacking statute. That is to say that nearly all of these decisions read the presence requirement of § 2119 to be consistent with the *Burns* definition of § 2111's presence requirement. *See, e.g.*, *Savarese*, 385 F.3d at 19 (citing *Burns*); *Lake*, 150 F.3d at 272 (same); *Edwards*, 231 F.3d at 936 (same); *Boucha*, 236 F.3d at 771–72 (same); *Casteel*, 663 F.3d at 1020 (same, and noting most circuit courts' reliance on *Burns* and its progeny); *Murray*, 1995 WL 295438, at *6 (same); and *Kimble*, 178 F.3d at 1167 (same). But the critical initial premise—that is, the reason why

grounds by *United States v. Culbert*, 435 U.S. 371 (1978).

"presence" in these federal statutes means what *Burns* panel said it means—remains somewhat elusive.

We note, as have other courts of appeals, that the legislative history of the carjacking statute indicates that Congress intended the statute's language to "track[] the language used in other federal robbery statutes (18 U.S.C. §§ 2111, 2113, 2118)." *Anti Car Theft Act of 1992*, H.R. Rep. No. 102-851, pt. 1, at 17; *see also Lake*, 150 F.3d at 272. But to say this much is to beg the question rather than to answer it: each of these statutes uses the same cryptic "person or presence" locution but is silent about *Burns* or any other judicial gloss on the crucial term. One thus finds silence in the legislative history when one searches for the *Burns* construction of "presence" in Congress's work product.

In defining the "carjacking" offense by using the roundabout language of "person or presence of another" (rather than simply criminalizing "carjacking"), the statute adopts a peculiar turn of phrase with an old pedigree. Indeed, Soler's principal brief solves, in part, the riddle of the Ninth Circuit's definition in *Burns* by directing our attention to nineteenth-century descriptions of the common law offense of robbery. Crucially, the baroque definition of "presence" that has made

17

its way into the nine decisions of our fellow courts of appeals appeared at least as early as 1844 in Massachusetts. That is to say that the *Burns* definition of "presence" appears almost verbatim in a report on the penal code of Massachusetts commissioned by that state's legislature. The report describes the offense of "robbery" as "larceny or stealing of a thing from the person of another, or from his custody in his presence, by force or putting him in fear." Report of the Penal Code of Massachusetts, Prepared Under a Resolve of the Legislature, ch. XVI, § 1 (1844) ("1844 Report"). The 1844 Report continues that "[a] thing is in the presence of a person, in respect to robbery, which is so within his reach, inspection, observation, or control, that he could, if not overcome by violence or prevented by fear, retain his possession of it." *Id.* at § 1, ¶ 5.

This common law definition of "presence" was recited in the early decades of the last century by the Massachusetts Supreme Judicial Court, *see Commonwealth v. Homer*, 235 Mass. 526, 543, 127 N.E. 517, 520 (1920), and in the late decades of the last century by the Supreme Court of California, *see People v. Hayes*, 52 Cal. 3d 577, 626–27, 802 P.2d 376, 406–07 (1990). Moreover, under California law, the common-law definition goes so far as to resolve what it means

for an object to be in the "*immediate* presence" of the victim—the very ordinary meaning that defendants urge us to adopt. *See Hayes*, 52 Cal. 3d at 626-27, 802 P.2d at 406; *accord Conde v. Henry*, 198 F.3d 734, 737 (9th Cir. 1999). Thus the reason why the Ninth Circuit approved of the district court's jury instruction in *Burns* is far less mysterious than it first appears.

Having identified the legal hook on which the *Burns* court could hang its interpretation of "presence," we turn to assess the legitimacy of the *Burns* definition as a matter of statutory interpretation. In our view, the Ninth Circuit was correct to read the common-law definition of "person or presence" into the federal robbery statute, as were the eight other courts of appeals that have applied the *Burns* interpretation of "presence" to the carjacking statute. "It is a settled principle of interpretation that, absent other indication, 'Congress intends to incorporate the well-settled meaning of the common-law terms it uses.'" *Sekhar v. United States*, 133 S.Ct. 2720, 2724 (2013) (quoting *Neder v. United States*, 527 U.S. 1, 23 (1999)). This is because "where Congress borrows terms of art in which are accumulated the legal tradition and meaning of centuries of practice, it presumably knows and adopts the cluster of ideas that were attached to each

19

borrowed word in the body of learning from which it was taken and the meaning its use will convey to the judicial mind unless otherwise instructed." *Morissette v. United States*, 342 U.S. 246, 250 (1952). In such cases, the common law furnishes an extrinsic source to aid our interpretation of the disputed term because the "absence of contrary direction may be taken as satisfaction with widely accepted definitions, not as a departure from them." *Id.*

While mindful that the common-law meaning canon applies only where the identity between the common law words and the statutory words is clear, *see United States v. Turley*, 352 U.S. 407, 411 (1957) (holding that the common law could not be used as an extrinsic source to interpret Congress's use of the term "stolen"), we note the exact parallelism between the common law terms and the text of the carjacking statute. Like the text of the carjacking statute, the common law crime of robbery was described as the taking of property from the "person" or "presence" of another by force. *See Collins v. McDonald*, 258 U.S. 416, 420 (1922). We also discern no contraindication that suggests that Congress intended to depart from the common law meaning of "presence" in folding a near-verbatim definition of common law robbery into the carjacking statute. On the contrary, as

20

we have noted above, the committee report accompanying the statute expressly indicates that the committee intended to "track" the federal robbery statutes. *See supra* at 17. We note, moreover, that the civil forfeiture provision of Title 18 refers to § 2119 by using the shorthand parenthetical "(armed robbery of automobiles)," not by using the potentially narrower colloquial term "carjacking." *See* 18 U.S.C. § 981(a)(1)(F)(iii). Given this context, the frequent use of the colloquialism of "carjacking" in the legislative history cannot serve as a sufficient indication that Congress intended to implicitly adopt a definition of "presence" that is otherwise at odds with the common law definition of robbery.

In sum, the statute's text does not use the argot of carjacking to define the meaning of "person or presence"; instead the statute uses the language of common law robbery. To borrow an oft-repeated metaphor, because the term "person or presence" was "obviously transplanted from another legal source," we will cultivate our interpretation of the statute in the "old soil" it brings with it. *See* Felix Frankfurter, Some Reflections on the Reading of Statutes, 47 Colum. L. Rev. 527, 537 (1947); *see also Sekhar*, 133 S.Ct. at 2724. Consequently, we apply the canon that the common law term "presence" in the context of the carjacking

21

statute takes the undisputed common law meaning reflected in *Burns*. *See United States v. Perez-Garcia*, 56 F.3d 1, 3 (1st Cir. 1995) (construing the phrase "from the person . . . of another" in § 2119 and noting that "[c]ourts generally agree that taking from a victim's person is understood to include the common law conception of taking from a victim's presence.").

As a final attack on the *Burns* definition of presence, Soler contends that the interpretation given therein is boundless and suggests no natural limit. Because, the argument goes, the proximity contemplated by the *Burns* view of "presence" can expand according to a defendant's capacity to retain possession if not overcome by fear, the interpretation we adopt here would seem to allow for criminal liability to hang on the results of a footrace. That is, where a victim could have outrun his robber to the taken property—whatever the distance, even if the length of the island of Manhattan separated the victim from his automobile—the *Burns* definition would erroneously lead us to conclude that the property was within the victim's "presence." *Cf. Lake*, 150 F.3d at 275–76 (Becker, C.J., dissenting). The argument is a red herring. The case law is replete with decisions that test the limits of the common law's relatively more elastic definition of

"presence." Those decisions clarify that the extreme examples that worry the defendant would clearly be foreclosed. *See, e.g.*, *Hayes*, 52 Cal.3d at 627, 802 P.2d at 905 (noting that the common law definition would not permit a robbery conviction where a defendant forcibly demands a combination to a safe many miles away). As the First Circuit has explained, "the presence requirement is not boundless. . . . [C]ourts have required the victim to have *both* a degree of physical proximity to the vehicle and an ability to control or immediately obtain access to the vehicle," *Savarese*, 385 F.3d at 20.[7] Generally speaking, we view the First Circuit's description of the outer bounds of "presence" as fairly reflecting the scope of the term as it is used in the carjacking statute. We are therefore not moved to depart from the well settled canon that, in the absence of a contrary indication, common law terms used in statutes should take their common law meanings.

---

[7] We also note that the 1844 Report includes an illustrative list to explain the meaning of presence, which confirms that at common law there must be *some* proximity between the owner and his property. The list includes among its examples "a horse standing by [the victim]"; the victim's purse "thrown aside to prevent its being taken by the robber, but still being near at hand"; or "an article of apparel which has fallen from [the victim's] person, but is still near at hand." 1844 Report, ch. XVI, § 5; *see also* Wayne R. LaFave, 3 Substantive Criminal Law § 20.3(c), at 179 (2d ed. 2003) ("'Presence' in this connection is not so much a matter of eyesight as it is one of proximity and

23

We accordingly join our fellow courts of appeals in adopting, for the purpose of interpreting the carjacking statute, the *Burns* definition of "presence" as the law of our Circuit. A motor vehicle is in the presence of the victim if it is so within his or her reach, inspection, observation, or control that he or she could, if not overcome by violence or prevented by fear, retain possession of it. This definition naturally implies a degree of physical proximity between the victim and the vehicle.

There is no dispute that the evidence introduced at trial, viewed in the light most favorable to the prosecution, easily met the *Burns* definition. Nor could there be: the facts of this case present a degree of proximity and control that is either identical or far greater than facts leading our fellow courts of appeals to affirm carjacking convictions and carjacking-related sentencing enhancements. *See, e.g., Savarese*, 385 F.3d at 20 (holding that a car parked "in the driveway" was in the presence of victims who were robbed inside their home); *Boucha*, 236 F.3d at 776 (holding that cars parked "just outside" the place where the victims' keys were taken were in the victims' presence); *Kimble*, 178 F.3d at 1166 (holding that a van parked "right outside the restaurant" in which victim was robbed of his keys was control . . . .").

in the victim's presence); *United States v. Lopez*, 271 F.3d 472, 486 (3d Cir. 2001) (holding that a car parked outside the residence in which the victim was robbed was in the presence of the victim).

The district court therefore properly denied each defendant's motion for a judgment of acquittal.

CONCLUSION

For the foregoing reasons, the judgments of the district court are **AFFIRMED**.